## Case No. 16,685.

### UNITED STATES v. WHITE.

[2 Wash. C. C. 29.] [1]

Circuit Court, D. Pennsylvania. April Term, 1807.

CRIMINAL LAW — EXAMINATION OF WITNESSES — POWERS OF JUDGE—GRAND JURY WITNESSES.

1. In the incipient stage of a prosecution, the judge may examine witnesses for the defendant, who were present at the time the offence is charged to have been committed, for the purpose of explaining the testimony of the witnesses for the United States; and the witnesses for the prosecution may be cross-examined.

[Cited in Re Ezta, 62 Fed. 986; Re Dana, 68 Fed. 892, 896.]

2. Witnesses for the defendant are never sent to the grand jury, but by the consent of the prosecution.

[Cited in U. S. v. Terry, 39 Fed. 362.]

The defendant was bound to appear at this court on a recognizance taken before a judge of the state of Pennsylvania, to answer a charge of preparing and setting on foot an expedition against the territories of Spain. The witnesses for the United States not being present, Mr. Dallas, District Attorney, moved to bind the defendant over to appear at the next court to answer the charge. He read some affidavits to prove that the defendant had applied to some persons at two different times, to engage in the expedition under Colonel Burr, and that he gave them papers, bearing the resemblance of, and which the witness believed to be, bank notes.

Mr. M'Kean, for defendant, offered to read affidavits, and also to cross-examine one of the witnesses, who had deposed in favour of the United States, to prove that the proposal alluded to was made and understood to be in jest.

Mr. Dallas opposed any examination of testimony for the defendant in this stage of the proceedings, as being unusual and improper.

## Case No. 16,686.

### UNITED STATES v. WHITE et al.

[4 Wash. C. C. 414.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1823.

JUDGMENT ON OFFICIAL BOND — ASSESSMENT OF DAMAGES—LIABILITY OF SURETIES.

1. Where an interlocutory judgment is rendered on a bond, with a collateral condition, the jury, if required by either party, must ascertain the damages if they be uncertain; and if not so, the court must: and for the sum so ascertained, and for no other, can the execution issue.

[Cited in Gurney v. Hoge, Case No. 5,875.]

[Cited in brief in Skidmore v. Bradford, 4 Pa. St. 298.]

2. The sureties in a bond given by J. S. to the secretary of the navy for the faithful execution of his agency in paying invalid pensioners, are not answerable for his defaults in not paying the navy and privateer pensioners; although J. S. was duly appointed agent for the two latter duties. A surety is never bound beyond the scope of his undertaking.

[Cited in Leggett v. Humphreys, 21 How. (62 U. S.) 76.]

[Cited in brief in State v. McFetridge (Wis.) 54 N. W. 3.]

[Appeal from the district court of the United States for the Eastern district of Pennsylvania.]

This was an action of debt brought in the district court by the United States against the defendants [William White, John White, and Isaac Johnson] upon a bond given by them to the United States, in the penalty of $5000. The district attorney, at the return term of the writ, entered up a judgment by default for the penalty, without assigning breaches, or calling for a plea, and issued a fieri facias for that sum, endorsed "$3373 74 cents, the real debt due." This sum being raised under the venditioni exponas, and the sureties having been advised that they were not liable for the defaults of William White on account of the

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

navy pension, and privateer pension funds, (which formed parts of the aggregate sum levied under the venditioni exponas), gave notice to the marshal not to pay over the money so raised to the United States; and upon the return of the writ, they moved the court for an order to the marshal to pay over to them so much of the money levied under the execution, as was claimed by the United States on account of the defaults of William White, as agent for the above funds, admitting that they were liable for the sum claimed in relation to the invalid pension fund. Upon this motion, the court ordered the plaintiff to file a new declaration upon the defendants' bond for the penalty of it, and the defendants to plead payment, in order that the actual sum due might be submitted to a jury under the direction of the court. Upon this plea an issue was formed, and a jury sworn, when the United States gave in evidence the bond on which the suit is brought, executed by the defendants on the 26th of February, 1813, in the above penalty of $5000, and also four several accounts against William White, balanced, one with the sum of $515 35 cents, another with the sum of $1828 84 cents, a third with the sum of $1012 10 cents, and the fourth with the sum of $17 37 cents. A mortgage of the defendant Johnson, and another of the defendant John White, both given in 1821 to the district attorney, in trust for the United States, for securing the payment of $3373 74 cents, the aggregate of the above balances due by the defendant William White. Also a letter dated the 28th of February, 1821, from the attorney of the defendant to the district attorney, requesting him to send him copies of the accounts containing the claims of the United States against the defendants, which were sent, and the receipt of the marshal for one half of the above sum of $3373 74 cents, under a venditioni exponas against him. The condition of the bond on which the suit is brought, after reciting that the secretary of the navy had appointed William White agent for paying invalid pensioners belonging to the state of Pennsylvania, is, that he shall in all things well and faithfully execute his agency. The defendants gave in evidence a letter from the comptroller of the treasury of the United States to the sureties, dated the 22d of December, 1820, stating that William White, in his capacity as agent for paying the pensions of invalids, in which they are sureties, owes a balance of $3373 74 cents, and that his accounts in relation to the debt due to the United States are closed. Also, a letter from the sureties to the comptroller, dated the 7th of May, 1821, stating that although they had not seen a particular statement of the accounts of William White, late commissioner of loans, with the United States, they had then no doubt that the balance of $3373 74 cents, mentioned in the comptroller's letter, was due. The letter then proceeds to solicit an indulgence as to the time of paying it, on an offer to give mortgages for securing the debt; also a letter from the comptroller to the district attorney, dated the 18th of May, 1821, mentioning the request of the sureties for indulgence, and directing him, instead of proceeding against them for a judgment, to accept of a deed of trust for securing the debt, upon sufficient property, should such be offered, and that the extent of time to be allowed for payment of the debt, would be afterwards decided at the treasury department. The district court charged the jury that the defendants were not liable to the claim of the United States for the above balance of $1029 55 cents, and interest thereon, which charge was excepted to, and a writ of error taken out. [Case unreported.]

The District Attorney, for plaintiffs.
Chauncey & John Sergeant, for defendants.

WASHINGTON, Circuit Justice. The proceedings in this cause in the district court were, as I understand, conformable with the practice of the courts of this state in actions upon bonds with collateral conditions. The inconvenience of such a practice is, to my mind, so striking, that had congress made no provision on the subject, I should not hesitate to adopt a different practice in this court. The inconvenience, or rather injustice, which may frequently attend the practice is, that the sum to be levied under the execution is at the will of the plaintiff's attorney; and after the property of the defendant has been sold, and often sacrificed, under the execution, he may be very inadequately compensated by the subsequent decision of the court that the execution had issued for more than was due, and an order of restitution of the overplus. It would certainly seem to be most proper that in some way or other, this matter should be decided before the execution is permitted to issue.

The practice in relation to bonds with collateral conditions is clearly established by the twenty-sixth section of the judiciary law [1 Stat. 87], which enacts: "That in all cases brought before either of the courts of the United States, to recover the forfeiture annexed to any articles of agreement, covenant, bond, or other specialty, where the forfeiture, breach, or non-performance shall appear by the default, or confession of the defendant, or upon demurrer, the court before whom the action is, shall render judgment therein for the plaintiff to recover so much as is due according to equity. And, when the sum for which judgment should be rendered is uncertain, the same shall, if either of the parties request it, be assessed by a jury." In cases, therefore, where the sum is uncertain, and a jury is requested by either party, the court may either direct a writ of inquiry to issue, or may swear a jury immediately to ascertain the sum justly due to the plaintiff. If the sum for which the judgment should be rendered be not uncertain, the court, I conceive, is to ascertain it: if uncertain, and a

jury be not requested, still the court may, in its discretion, ascertain it, or submit the matter to a jury. But under no circumstances can a final judgment be entered for the forfeiture, or penalty of the bond, in the cases mentioned in this section. The district court, having rendered judgment in this case for the penalty of the bond on which the suit is brought, without having ascertained the sum justly due to the United States in the way pointed out by the above section, committed an error for which this court would reverse the judgment, if the defendants had taken out a writ of error to that judgment. But as the only record before the court is that of the proceedings upon the new declaration and plea directed by the district court, I shall proceed to examine those, and the judge's charge to the jury.

There is no uncertainty as to the debt claimed by the United States. That is ascertained by the mode pointed out by the act of congress. The only question before the district court was, whether, in point of law, the sureties for William White were liable for the sums due by him as agent for the navy pension fund, and the privateer pension fund, to settle which it would seem that a jury was unnecessary, and I think improper. Still, if the charge was right, the court will not reverse the judgment for that error, as the jury was requested so to act by both parties.

Upon the question of law, I think the sureties were not liable for the sums due by William White as agent for the two last mentioned funds. The bond upon which this action is founded recites in the condition, that William White had been appointed by the secretary of war agent for paying invalid pensioners belonging to the state of Pennsylvania, and is, that he shall faithfully execute his agency. The fund for paying invalid pensioners, and those for paying the navy and privateer pensions, are perfectly distinct, raised from different sources, and the administration and management of them are vested in different persons. The first is committed to the superintendence of the secretary of war, who is directed by law to take a bond from his agents in a penalty not exceeding $5000 for the faithful discharge of their duties. The navy pension fund was formed by a pledge of all moneys accruing to the United States from the sale of prizes, and a further pledge of the public faith, to make it sufficient for the purposes to which it was destined; and so much of the fund accruing from prizes which was paid prior to the 26th of March, 1804, was placed under the management of the secretaries of the treasury, war and navy departments. That which was paid afterwards was to be disbursed by the treasury, into which it was to be paid, pursuant to warrants from the secretary of the navy. The fund destined for disabled seamen on board of privateers, their widows and children, was raised from a source distinct from the other two, was paid into the treasury, and directed to be disbursed according to the directions of the secretary of the navy. William White, who was appointed by the secretary of war agent for paying the invalid pensioners of Pennsylvania, was also appointed agent for paying the navy pensioners, by the commissioners of that fund, and agent for paying the privateer pensioners, by the secretary of the navy. Whether he gave bond to those commissioners, and to the secretary of the navy, for the faithful performance of his duties, does not appear; nor can I find any law which required such bonds to be given. But nothing can be more clear in law, in reason, and in justice, than that the sureties for his fidelity in paying away the money placed at his disposal by the secretary of war to invalid pensioners are not his sureties for his faithful disbursement of moneys put into his hands by the commissioners of the navy fund, or by the secretary of the navy for the use of privateer pensioners. It forms no part of the engagement into which they entered, and the case is in no respect varied by the circumstance that William White happened to be appointed, by the superintendents of the three funds, agent in relation to each of them. A surety can never be bound beyond the scope of his engagement; and therefore a surety for the faithful service of B as clerk to C, who afterwards enters into partnership with D, is not liable for unfaithful conduct to C and D. 3 Wils. 532.

The acknowledgment by the sureties in their letter to the comptroller of the 7th of May, 1821, that the balance of $3373 74 cents was due, cannot affect this question, since it is obvious that they made that acknowledgment under a mistake, which the letter of the comptroller of the 22d of December, 1820, led them into. Neither is it affected by the mortgages which they gave, as the present suit is not on the equity side of the court to foreclose the equity of redemption. If it had been, the court, upon the facts appearing in this case being disclosed in that, would have dismissed the bill. I am, therefore, of opinion, that the sureties in this case are not liable to the United States for the sum of $1029 55 cents, and the interest, which is claimed as due by William White on account of the navy pension, and privateer pension funds; and as the claim against him, on account of the invalid pension fund has been satisfied, the judgment of the district court, which is in favour of the defendants, must be affirmed.