UNITED STATES v. ABEEL et al. †

(Circuit Court of Appeals, Fifth Circuit. October 4, 1909.)

No. 1,823.

1. CLERKS OF COURTS (§ 74*)—CLERKS OF UNITED STATES COURTS—LIABILITY ON OFFICIAL BONDS—CONVERSION OF MONEY DEPOSITED TO PAY COSTS.

A clerk of a Circuit Court who has given bond as required by Rev. St. § 795, or under the provisions of Act Feb. 22, 1875, c. 95, § 3, 18 Stat. 333 (U. S. Comp. St. 1901, p. 619), conditioned that he shall "faithfully discharge the duties of his office * * * and properly account for all moneys coming into his hands as required by law," and who fails to pay out to the persons entitled thereto money deposited with him by litigants to secure costs under an order or rule of the court, or to account for and pay over the same to his successor in office, commits a breach of such bond.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 132; Dec. Dig. § 74.*]

2. CLERKS OF COURTS (§ 75*)—CLERKS OF UNITED STATES COURTS—ACTION ON OFFICIAL BOND.

Where a clerk of a Circuit Court in the course of a number of years received a large number of deposits of money made by litigants to secure

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied November 2, 1909.

costs, as required by a rule of court, and failed to pay the same out to the persons who became entitled to the same as fees or to turn the fund over to his successor in office, but converted it to his own use, the United States, as payee, may maintain an action on his official bond to recover the amount, and is not required in its pleading to name all or any of the persons entitled to share in the fund as use plaintiffs, since the sums so deposited can in no event become the property of the clerk beyond the amount he is entitled to retain for his own fees, but must legally remain subject to the orders of the court, which has power on the recovery of the fund to see that it is properly disbursed.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 138; Dec. Dig. § 75.*]

In Error to the Circuit Court of the United States for the Northern District of Texas.

Action by the United States against Alfred Abeel, Fannie Finks, as executrix of the will of John H. Finks, deceased, and the Fidelity & Deposit Company of Maryland. Judgment for defendants on exceptions to first amended original petition of plaintiff, and plaintiff brings error. Reversed.

The following is the petition of the plaintiff, filed in the Circuit Court:

"To the Honorable Judges of Said Court:

"Your petitioners, the United States of America, hereinafter called plaintiffs, by their district attorney for the Northern District of Texas, William H. Atwell, after having obtained leave of the court, file this, their first amended original petition, in lieu of their original petition filed herein on the sixteenth day of October, 1907, and for such amendment complain of Alfred Abeel, Mrs. Fannie Finks, a feme sole, and the Fidelity & Deposit Company of Maryland, all of whom are hereinafter styled defendants, and represent:

"(1) That Alfred Abeel is an inhabitant, resident and citizen of the county of McLennan, state of Texas. That Mrs. Fannie Finks is the widow of John H. Finks, deceased, and is the executrix of the said John H. Finks' estate, and resides in and is a citizen and inhabitant of the county of Dallas, state of Texas; that the Fidelity & Deposit Company of Maryland is and was at the time of the happening of the matters hereinafter detailed, a corporation organized and existing under and by virtue of the laws of the state of Maryland, for the purpose, among other things, of guaranteeing the fidelity of persons holding positions of public and private trust, and to execute bonds and undertakings for such persons, and at the time of the execution and delivery of the hereinafter mentioned bond and writing obligatory, had complied with the provisions of the laws of the state of Texas authorizing it to do business in said state of Texas, and had complied with the provisions of an act of Congress, approved August 13, 1894, and had been duly granted by the Attorney General of the United States authority as under the laws provided to do business under such act in the state of Texas and in the Northern District thereof, and the said company has and had a local director and agent in the city of Dallas on the dates aforesaid, to wit, Lee E. Burgess.

"(2) That the said Mrs. Fannie Finks was, by the duly probated will of the said John H. Finks, deceased, appointed executrix of the said John H. Finks' estate, and became under the terms of said will, and is now, the owner and holder of all the said property of the said John H. Finks, both real and personal, and that vested in him at the time of his demise.

"(3) That on the thirteenth day of May, 1903, John H. Finks was the duly appointed and acting clerk of the Circuit Court of the United States within and for the Northern District of Texas, and on or about that date was notified and required by the Attorney General of the United States to execute with sufficient sureties, and cause to be delivered to these plaintiffs, a bond to these plaintiffs in the penal sum of fifteen thousand dollars, conditioned among

other things that he, the said John H. Finks, should faithfully discharge the duties of his office, and properly account for all moneys coming into his hands, as required by law; and thereupon, to wit, on the thirteenth day of May, 1903, the said John H. Finks, as principal, and the said Alfred Abeel and the said Fidelity & Deposit Company of Maryland, as sureties, did make, execute and deliver to these plaintiffs, pursuant to the laws in such case made and provided, their certain bond and writing obligatory, in words and figures herein, following, to wit:

"'Know all men by these presents: That we, John Hollingsworth Finks, of Dallas, Dallas county, Texas, and Alfred Abeel of Waco, in the county of McLennan, are held and firmly bound unto the United States of America, in the sum of fifteen thousand dollars, lawful money of the said United States to be paid to the said United States, for which payment, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents. Signed with our hands and sealed with our seals this 13th day of May 1903.

"'The condition of the above obligation is such,

"'Whereas, pursuant to law, John Hollingsworth Finks·has been appointed clerk of the Circuit Court of the United States for the Northern District of Texas, to have and to hold the same, with all the rights, privileges and emoluments thereunto lawfully appertaining, as by an appointment to him bearing date the 24th day of April 1889, more fully appears, a certified copy of which is hereunto annexed.

"'Now, if the said John Hollingsworth Finks, by himself and by his deputies, shall faithfully discharge the duties of his office and seasonably record the decrees, judgments and determinations of the said court, and properly account for all moneys coming into his hands, as required by law, then this obligation to be void, otherwise, to remain in full force and virtue.

"'(L. S.)    John Hollingsworth Finks.
"'(L. S.)    Alfred Abeel.
"'(L. S.)    Fidelity & Deposit Company of Maryland.
"'(L. S.)             By Lee E. Burgess, Local Director.'

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Which said bond was duly, to wit, on the first day of June, 1903, approved.

"(4) That the said bond and writing obligatory was executed and delivered as aforesaid for and in consideration of the fact that the said John H. Finks had not, within four years next preceding the said thirteenth day of May, 1903, given any bond to secure the faithful discharge by him of his duties as such clerk aforesaid, and was also executed and delivered to enable the said John H. Finks to comply with the requirement made and notified to the said John H. Finks by the Attorney General of the United States, to wit, that the said John H. Finks give a bond to the plaintiffs conditioned as aforesaid in the penal sum aforesaid, for the purpose of strengthening the security theretofore given by him, the said John H. Finks, for the faithful discharge of his duties as·such clerk, and was further executed and delivered for the purpose and in consideration of enabling the said John H. Finks to retain his office and position as such aforesaid clerk.

"(5) That thereafter, on the first day of June, 1903, the said bond and writing obligatory, so executed and delivered to the plaintiffs, was duly presented to and approved, as aforesaid, by the United States Circuit Court for the Northern District of Texas, and recorded at large upon the records thereof.

"(6) That thereafter the said John H. Finks, pursuant to said appointment and under and pursuant to and because of the security afforded by the said bond, and the approval thereof, continued to occupy and fill his said office and position as clerk aforesaid, and receive the emoluments thereof under the law until the fourteenth day of May, 1906, at which time his term was ended.

"(7) That the said·John H. Finks was appointed clerk of the Circuit Court of the United States for the Northern District of Texas on the twenty-fourth day of April, 1889, in all things due and regular, and continued to serve under the law as such clerk from the date of said appointment until the fourteenth day of May, 1906.

"(8) The plaintiffs allege that the said John H. Finks did not faithfully discharge all the duties of his said office of clerk of the Circuit Court of the

United States in and for the Northern District of Texas, and for assigning a breach thereof, and of the condition of the said bond and writing obligatory, the plaintiffs allege that after his appointment as clerk of said Circuit Court, and at divers times between the said twenty-fourth day of April, 1889, and the said fourteenth day of May, 1906, and between the thirteenth day of May, 1903, and the said fourteenth day of May, 1906, upon and during all of which dates the said John H. Finks was in office, as aforesaid, filling and occupying the position of clerk of the United States Circuit Court, as aforesaid, a large amount of money, to wit, $26,675.04, came into the hands of the said John H. Finks in his official capacity as such clerk, and not otherwise, that is to say, by virtue and under the authority of the rules and regulations of the Circuit Court of the United States for the said District, which said rules and regulations were made by the presiding judge and judges of the said Circuit Court under and by virtue of the power and authority in them vested as such courts and judges through and by the statutes and acts of Congress of the United States, which said rules are hereto annexed and made a part of this petition, rule 8 thereof being specially pleaded, which was in the following words, to wit:

" 'The clerk and marshal shall keep in their respective offices the statutes of the United States. All moneys collected for costs shall be collected upon a taxation showing the items taxed. Neither the clerk nor marshal shall be required to perform any service for the parties to any cause until satisfactory security to the clerk and marshal respectively shall be given in such sums as will cover the costs in the case, or an amount sufficient to cover the expense of the required service shall have been deposited; provided, if at any time any service shall be required of the marshal which shall require the expenditure of moneys by him to properly perform it, then the marshal may require a deposit of such sum as will be sufficient to meet the required outlay. Nothing in this rule is to be taken as depriving any party of any rights he may have under the existing practice to protect himself against his adversary in the matter of costs,' and the aforesaid sum of money was collected by him as such clerk and placed in his official possession and custody to be by him as such clerk safely kept under the rules as aforesaid until the same was earned, disbursed or otherwise accounted for by him, according to the rules and regulations aforesaid, and to the statutes of the United States relating to the payment of costs in suits at law and in equity in the United States courts, and according to the statutes and judgments carrying such cost to the respective parties in such litigation.

"That the said moneys, amounting in the aggregate to $26,675.04, were derived from numerous payments and deposits made by parties litigant in cases brought or pending in said court, which said payments and deposits were required by the clerk under the authority of the law and rules heretofore mentioned, and under and by virtue of the laws of the United States and the rules and judgments of the said Circuit Court, and the said sum of money was the aggregate of said payments and deposits, and the said aggregate was a part of the moneys and deposits that the said Finks had exacted and collected under the authority of the rules and judgments aforesaid from parties litigant in the said court over which he was said clerk, and which was paid to him by reason of said rules and law and judgment and exaction and because he was such clerk, and the same is no part of any sum or sums earned by him, the said Finks, as such clerk, but was in fact the sum that he had collected as such clerk under the authority aforesaid, for the payment in such litigation of witness fees, marshal's fees, stenographer's fees, deposition fees, attorneys' docket fees, notaries' fees, and in general court costs, exclusive of those due to him as such clerk, or any of his deputies, but were paid into his hands for disbursement to the said parties because he, the said Finks, demanded the same under the said authority and as such clerk aforesaid.

"That the said money so paid to him and collected by the said Finks, as clerk, were to be and should have been by him, the said clerk, paid to the witnesses who earned their fees, to the notaries who earned their fees, to the marshals who earned their fees, to the stenographers who earned their fees, to the attorneys who earned their fees, and to such other officers or witnesses or individuals as might, by the judgments of said court, to be entitled to pay

out of the said moneys so deposited with the said Finks under the said rules, law, and judgments. But that the said moneys were by him at and before the time of his retirement from office, and at and after the making of the bond herein sued on, misappropriated and converted to his own use, in violation of his duty as clerk of said court, which duty required him to account for said money and any and all parts thereof, and to pay over the same and any and all parts thereof to the aforesaid parties to whom they were due, or to his successor in office, or to the plaintiffs, and the said John H. Finks, at the time of his retirement from office, and at all other times before, and his executrix, the said Mrs. Fannie Finks, have entirely failed and refused so to do, and the said Mrs. Fannie Finks, executrix as aforesaid, Alfred Abeel, surety as aforesaid, and the Fidelity & Deposit Company of Maryland, surety as aforesaid, each of them have failed and refused and neglected to pay over to the successor of the said Finks in office, or account for, the said sum of money, to wit, $26,675.04, or any part thereof.

"(9) Plaintiffs show that the condition of the said bond has been breached, as hereinbefore shown, to wit, by the failure and refusal of the said Finks, as shown in paragraph 8, to properly account for all moneys coming into his hands, as required by law, to wit, the moneys and funds hereinbefore mentioned.

"(10) Plaintiffs show that filed herewith and annexed hereto as a part hereof is a book labeled upon the outside thereof, 'Trial Balance,' which contains on the first forty-two pages thereof an itemized statement of the moneys and funds mentioned in paragraph 8 of this complaint, which the said John H. Finks, clerk as aforesaid, failed and refused to account for, as required by law, which came into his hands as such clerk as aforesaid, and the plaintiffs show that it is inexpedient and impracticable to set out in this petition, otherwise than shown by said exhibit, the precise amount in each case which goes to make up the aggregate amount herein sued for, to wit, the said $26,675.04, because to effect a more detailed statement herein would render this pleading voluminous and serve no good purpose, the plaintiffs showing that the aforesaid aggregate comprises amounts the kinds of which are detailed in paragraph eight of this petition, growing out of hundreds of cases, but the dates and numbers of the causes, and whether law or equity, and the amount of deposits, are set out in said 'Trial Balance.'

"(11) Plaintiffs show that by reason of the execution and delivery of the said bond and writing obligatory, the defendants and each of them became liable jointly and severally to pay to these plaintiffs the amount of money in damages heretofore set forth, to wit, the sum of $26,675.04.

"(12) Wherefore, plaintiffs pray that citation having issued in terms of law against each of the defendants herein, they have upon final hearing hereof, judgment against said Mrs. Fannie Finks, executrix and legatee, for such amount as under the laws of the state of Texas relating to descent and distribution of estates they may be entitled to, and that they have judgment for the full amount of said bond, to wit, fifteen thousand dollars, against said Alfred Abeel, surety as aforesaid, and against said Fidelity & Deposit Company of Maryland, surety as aforesaid, together with the interest thereon from October 16, 1907, at the rate prescribed by law, and all costs of suit.

"William H. Atwell,

"United States District Attorney for the Northern District of Texas, for Plaintiffs."

The defendants excepted to the petition as follows:

"Said defendants specially except to plaintiff's said first amended original petition, in that same wholly fails to show that the plaintiff is in any wise interested in the alleged subject-matter of this suit, nor does it appear from said petition that this suit is instituted by the plaintiff herein upon the relation of any person whomsoever shown in any wise to be aggrieved by any of the acts attempted to be complained of by the plaintiff herein, nor are any such acts, facts or circumstances as entitle the plaintiff to maintain this suit in any wise averred in the said petition herein; and of this the said defendants pray judgment; and, as, etc."

The Circuit Court sustained the exceptions, and entered judgment against the plaintiff. The plaintiff sued out the writ of error, and assigns that the Circuit Court erred in sustaining the exceptions to the petition.

Wm. H. Atwell, U. S. Atty.

Etheridge & McCormick, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). This case was decided against the plaintiff on a general exception to the petition. The court below, therefore, held that, admitting all the averments of the petition to be true, it showed no right of action in the plaintiff. The action is by the payee, the United States of America, against the makers of the bond sued on. To show fully the case presented by the petition, we have set it out in full in the statement of the case, omitting only the exhibits, which may be understood from the averments of the petition.

When Finks was appointed clerk of the Circuit Court of the United States for the Northern District of Texas, he was required to give bond in a sum to be fixed, and with sureties to be approved, by the court which appointed him, "faithfully to discharge the duties of his office." Rev. St. U. S. § 795 (U. S. Comp. St. 1901, p. 619). The bond conforms to the statute, and contains the condition that he, "by himself and by his deputies, shall faithfully discharge the duties of his office * * * and properly account for all moneys coming into his hands, as required by law." The petition shows very clearly and elaborately that he failed to comply with the condition of his bond. He received, under rules of the court of which he was clerk, $26,675.04, and has not properly disbursed or accounted for the same, but, on the contrary, has misappropriated and converted the money to his own use. The money having been received by Finks as clerk under rules of the court, it is clearly money held by him officially, and it is a breach of his bond to convert it to his own use. Smith v. United States, 170 U. S. 372, 379, 18 Sup. Ct. 626, 42 L. Ed. 1074; Howard v. United States, 184 U. S. 676, 22 Sup. Ct. 543, 46 L. Ed. 754. It does not seem to be denied that the conversion of the money was a plain violation of duty and a breach of the condition of the bond for which the makers are liable in a proper action. The defense, as we understand it, is that the suit cannot be maintained by the United States, the payee named in the bond. The money, it appears, was received by the clerk as deposits to secure costs. The several sums making the aggregate, after deducting his own costs, should have been paid by the clerk to witnesses, attorneys, notaries, marshals, and others who earned and were entitled to fees out of the funds so deposited. He failed and neglected to pay out the fund as he should have done, but converted it to his own use, and failed to turn it over to his successor in office or to otherwise account for it. It is not denied that if the fund so received had been the property of the United States, due to the government primarily and not to others, this action could be maintained; nor is it denied that any one of the officers or witnesses who earned and to whom was

174 F.—2

due a part of such sum could maintain an action on the bond in the name of the United States for his use for the sum so due him. The action here is not by the United States as nominal plaintiff for the use of some named witness or officer, but it is a suit seeking to recover the entire amount converted by the clerk, stating the facts and showing that the sums making up the aggregate sued for were really earned by and are due to the officers and witnesses to secure whom the deposits were made. The defense sustained by the court below is based on the proposition that the United States has no such interest in the fund as will sustain the suit.

These sums were paid to Finks, not as an individual, but as clerk of the court. The parties who made the deposits were required to do so by rules of the court. Except as to the part of the sums necessary to pay his own costs, the clerk held the money officially, to be paid out to those entitled to it. His possession of it never gave him any personal right to it, and he violated his official duty when he converted it to his own use. Holding the money as clerk, he held it subject to the orders of the court, and any witness or officer entitled to part of it, on motion and on proving the facts, could have obtained an order on the clerk to pay him the amount due him. If, when he ceased to be clerk, the deposits were in his custody, he had no right to longer hold them. If he could not immediately disburse the money to those entitled to it, he should have left it on deposit, subject to the order of the court, or turned it over to his successor in office. If it had been shown to the court that a retiring clerk had funds in his hands held by him officially, an order would have been made, if necessary, directing the fund to be turned over to his successor, or otherwise placed under the control of the court.

The clerk necessarily receives under the rules of court a great many small sums as security and indemnity for costs. These sums in the aggregate in a few years may amount to many thousand dollars. It would be unfortunate if there was no other way to make him account for the fund except by suit in the name of the United States by each witness or officer to whom a few dollars were due.

It is not denied, as we have said, that this suit could be maintained by one of the witnesses or officers who sued in the name of the United States for the small part of the sum involved that had been earned by him. This petition alleges the failure of the clerk to pay over the moneys sued for to those who earned it or to his successor. If necessary to place it on that ground, why could not this suit be maintained as one for the use of those entitled to the fund, or for the use of the succeeding clerk? Clearly, if the money sued for is collected, the court could direct its disbursement by the clerk to any witness or officer who showed that he was entitled to fees out of it.

The bond sued on is payable to the United States. The legal title, therefore, to whatever sum is due for a breach of the bond, is in the government. Under the ancient common law, no action whatever could be maintained on the bond at law except by the payee named in the bond. As modified by statutes and decisions in most jurisdictions, others having equitable interests are permitted to assert them at law, but they are usually required to do so in the name of the payee. This

is true even where the payee is entirely without pecuniary interest, and is the mere holder of the legal title. Therefore, in the absence of a statute changing the rule, this action could only be brought in the name of the government, the payee in the bond, and the only question in this aspect of the case is whether or not it is a fatal defect to fail to name the person or persons entitled to the fund, and to aver that the suit is for his or their use. When we consider that the petition fully states the facts, and shows that it would be impracticable to name all who may be entitled to some small portion of the fund, this objection seems technical and wanting in merit and substance. The main reasons for naming the usee is that he may be in court to receive what may be due him, or to have his rights protected, and that he may be bound by the result. If recovery is had in this action, the amount collected would be brought into court by the suit, and would be subject to the orders of the court. Nor would there be any danger that the defendants would be subject to a second suit by the usees for the same or a part of the same demand. The clerk or his representative or the sureties on his bond, under an order of the court, could at any time deposit the fund with the present clerk of the court, and be relieved of all further liability on account of such fund. If paid pursuant to a judgment of the court for breach of the bond, the effect would be the same. Proof of the fact of payment would bar any other action for the money.

Unquestionably one entitled to a part of the fund in the hands of the clerk could sustain a suit on the clerk's bond in the name of the United States. Howard v. United States, supra. But it by no means follows that on the facts stated in the petition a suit for the breach cannot be maintained by the United States without a statement that the suit is for the use of some one named in the petition. In Boston & El. Ry. Co. v. Grace & Hyde Co. et al., 112 Fed. 279, 284, 50 C. C. A. 239, 244, the court, referring to the phrase in a declaration, "for the use and benefit" of another, said:

"According to respectable authority, the expression of a use may be disregarded as surplusage. Its purpose is to guard the interest of the usee against the adverse action of a nominal plaintiff. It is held that such a phrase has no force to make an issue different from what it would have been if the phrase had been left out. It is held, also, that the declaration of use is no part of the pleading. Bentley v. Insurance Co., 40 W. Va. 729, 739, 23 S. E. 584; Belton v. Gibbin, 12 N. J. Law, 77; State v. Johnson, 52 Ind. 197; Clay Fire & Marine Ins. Co. v. Huron Salt & Lumber Mfg. Co., 31 Mich. 346, 355; Northrop v. McGee, 20 Ill. App. 108; Tedrick v. Wells, 152 Ill. 214, 217, 38 N. E. 625; Hobson v. McCambridge, 130 Ill. 367, 375, 22 N. E. 823; 15 Enc. Pl. & Prac. 484, 498."

See, also, 31 Cyc. 100, and cases there cited, and United States v. Griswold, 8 Ariz. 453, 76 Pac. 596; Id., 9 Ariz. 304, 80 Pac. 317.

We are of opinion that the facts stated in the petition show a cause of action in the plaintiff. The conclusion, we think, is sustained by the principles of pleading at common law. "So far as plaintiffs are concerned, the rules of common law are modified very little, if at all, in the Texas practice." Townes on Texas Pleading, 199. It may not be amiss to note the fact that, if this were a suit on a Texas official bond, "made payable to the state of Texas, or any officer thereof," a

suit could be maintained on it in the name of the state alone when the recovery would inure to parties other than the state; such suit being brought "for the benefit of all parties entitled to recover thereon." Id. 202; Rev. St. Tex. 1895, art. 1207. This action is, in effect, for the benefit of all parties entitled to the fund sued for; for, if it is recovered, it will be brought into court to be disposed of according to law. It is true that no effort is made to name the many persons who may be entitled to parts of the fund. It appears to be impracticable to do so. To hold that the suit cannot proceed without naming them would be equivalent to saying that the clerk could appropriate the fund and hold it because of the fact that it is not possible, under the circumstances, to name them all. We would not willingly reach a conclusion leading to results so injurious to the public interests.

But if, as between the clerk who has wrongfully converted the fund and the United States, the latter has the better right, it is probably not necessary to consider the question as to whether this action can be construed to be and sustained as one for the use of the clerk's successor, or the witnesses and officers who earned the fees.

Except as to fees and commissions plainly allowed by law, it is not intended that the clerk should become the owner of any money received by him officially. No matter how long it may remain in his hands, no matter how negligent of asserting claim to it the true owner may be, it is not to become the property of the clerk, and he has no right to use it as his own. It would be against public policy, and likely to lead to scandalous results, if sums which litigants are required to deposit with the clerk to secure costs or otherwise could be considered a personal gain or perquisite of the clerk if not claimed by those entitled to it. Such a doctrine would make it to the pecuniary interest of the clerk to suppress the facts relating to the deposit of money and the disposition of cases which called for its distribution. If there were no statutes on the subject, it would still be within the power of the court, its attention being called to the matter, to prevent such a course of conduct on the part of the clerk. If a sum received by the clerk to be distributed as costs and fees could not be paid out by order or direction of the court or pursuant to the usual practice, the clerk should make a deposit of it as required by statute:

"All moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to the credit of such court: Provided, that nothing herein shall be construed to prevent the delivery of any such money upon security, according to agreement of parties, under the direction of the court." Rev. St. U. S. § 995; Act March 24, 1871, c. 2, § 1, 17 Stat. 1 (U. S. Comp. St. 1901, p. 711).

When the money was so deposited, there would be a public record of the fact tending to protect parties in interest, and the accumulation of these sums in the hands of the clerk would no longer lead him into temptation. These sums, we repeat, could never become the property of the clerk, but they may, if unclaimed, and if it become impossible to pay them to those entitled to them, become the property of the United States, "if they have remained in the custody of the

court unclaimed for ten years or longer." Rev. St. U. S. § 996, as amended by Act Feb. 19, 1897, c. 265, § 3, 29 Stat. 578 (U. S. Comp. St. 1901, p. 711).

If it be true, as alleged, that the clerk converted funds held by him officially to his own use, this was a breach of the bond he gave to the United States, and it was the duty of the United States Attorney to bring a suit on the bond. Judge Boyd, speaking for the Circuit Court of Appeals for the Fourth Circuit, suggested as the proper practice:

"When such state of facts was shown to exist, we think the law clearly contemplates that a breach shall be declared which would entitle the United States to recover the amount of the bond, to be discharged, however, upon the payment of such special damages as may have been proved to exist." United States v. American Surety Company, 163 Fed. 228, 89 C. C. A. 658.

Upon proof of a breach of the bond, in the aspect of the case most unfavorable to the plaintiff, a recovery of nominal damages would follow. If, however, the evidence is such as to show the amount of damages arising from the breach of the bond, instead of entering judgment for the entire penalty, to be subsequently satisfied, as suggested in the case last cited—there being no proof of special damage in that case—the judgment should be entered for the amount shown to be due "according to equity." The following is the statute which controls the procedure in such cases:

"In all suits brought to recover the forfeiture annexed to any articles of agreement, covenant, bond, or other specialty, where the forfeiture, breach, or nonperformance appears by the default or confession of the defendant, or upon demurrer, the court shall render judgment for the plaintiff to recover so much as is due according to equity. And when the sum for which judgment should be rendered is uncertain, it shall, if either of the parties request it, be assessed by a jury." Rev. St. U. S. § 961; Act Sept. 24, 1789, c. 20, § 26, 1 Stat. 87 (U. S. Comp. St. 1901, p. 699).

In S. Oteri, 67 Fed. 149, 151, 14 C. C. A. 344, 346, Judge Pardee said that "the rule declared by this statute is to be generally applied in proper cases in courts of the United States." See, also, Gurney v. Hoge, 6 Blatchf. 499, Fed. Cas. No. 5.875; United States v. White, 4 Wash. C. C. 414, Fed. Cas. No. 16,686.

This case has been brought to this court to review a judgment rendered sustaining an exception to the petition. For purposes of our decision, therefore, we are required to assume the allegations of the petition to be true. Nothing said here, however, should reflect on the character of the deceased clerk, whose representatives will have the right on the next trial to require proof of, and to disprove, the charges made in the petition.

The judgment is reversed, and the cause remanded, with instructions to overrule the exception to the petition, and thereafter proceed according to law and the views herein expressed.