UNITED STATES v. BRAINERD et al.

(District Court, E. D. Oklahoma. February 6, 1918.)

Nos. 2703–2705, 2710.

1. BANKRUPTCY ⊙⟶230—REFEREE'S ILLEGAL COLLECTION OF FEES—RECOVERY BY UNITED STATES.

In view of the condition in referee's bonds, and the fact that fees and compensation go to a referee as an individual, the United States cannot, despite Act July 1, 1916, c. 209, providing for investigation of the accounts of referees, etc., recover from referees in bankruptcy, for the benefit of private litigants sums allowed and retained out of estates in excess of amounts provided for by the Bankruptcy Act.

2. BANKRUPTCY ⊙⟶223—ALLOWANCE TO REFEREE—COLLATERAL ATTACK—"JUDICIAL ORDER."

As an order allowing fees and compensation to a referee is a "judicial order," and as the Bankruptcy Act provides for review of the same, such

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an order cannot be collaterally attacked by an action against the referee and his bondsmen to recover amounts allowed, even though the allowances were erroneous.

3. BANKRUPTCY ⬥230—REFEREES—BONDS OF.

Bonds given by referees in bankruptcy, conditioned that such officials shall faithfully discharge and perform all duties appertaining to the office of referee, neither create nor give any right of action to, the obligee therein named, or for the use of persons for whom they are given, but are merely collateral security for performance by the referee of the duties imposed by the Bankruptcy Act.

At Law. Actions by the United States against Ezra Brainerd, Jr., and others, against W. T. Ward and others, and against R. H. Matthews and others, referees in bankruptcy and their bondsmen. On demurrers to the petitions. Demurrers sustained.

Paul Pinson, Asst. Dist. Atty., of Tulsa, Okl.

N. A. Gibson, Jos. L. Hull, and T. L. Gibson, all of Muskogee, Okl., and J. H. Gordon and E. E. McInnis, both of McAlester, Okl., for defendants.

POLLOCK, District Judge. The above-entitled and numbered cases are each and all actions at law brought by the United States in its own right and title to recover from defendants therein named, the same being the referees in bankruptcy duly qualified and acting in the respective referee divisions of this district, and their bondsmen, sums of money allowed to and collected by said referees out of estates in bankruptcy by them being administered under either general or special orders in bankruptcy proceedings made by the presiding judge of this court, which said amounts so charged, collected, and received by defendant referees are by the government said to have been in excess of the compensation to them allowed by the provisions of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544).

To the said several petitions defendants therein have demurred. The grounds of said demurrers are: (1) Want of sufficient statement of facts to constitute a cause of action against defendants; (2) misjoinder of causes of action. In so far as the latter ground for demurrer is concerned, it is evident, if the demurrers be sustained, nothing of a vital nature would be determined, for a separation of causes of action could be ordered and all proceeded with.

The first ground for demurrer stated raises the substantial question presented in these cases. These being actions at law, it is clear the plaintiff must recover on the strength of its legal right or title to the funds sought, or not at all. The question, therefore, in these cases is: What, if any, legal right or title to the funds sought to be recovered does the plaintiff plead in its petitions. As the claims of the government in all the above cases are of the same general nature, all will be considered together.

[1] The moneys now in the hands of the several referees, sought to be recovered by plaintiff, were retained by them out of estates in bankruptcy being administered under the Bankruptcy Act in courts of bank-

ruptcy, and were retained in pursuance of orders, either general or special, made in the course of administration of such estates. It is therefore evident any such funds arose out of the private property of either the creditors of said estates in bankruptcy or of the bankrupts themselves, and that the plaintiff has no pecuniary interest therein, except it transpire in some particular case the government was a creditor claiming under the law in its own right, and no such claim is presented in these cases. Being the private property of the parties to the bankruptcy proceeding out of which the funds arose, and the government having no pecuniary interest therein, more than it or the state has in the private property of parties litigant in courts of their creation, and conceding for the purpose of argument, but not so holding, in these cases, the moneys retained by the referees as fees or compensation for services performed was, as claimed by plaintiff, in excess of the amounts allowed under the provisions of the Bankruptcy Act, and in consequence the orders of allowance made were erroneous, the question presented here for decision, in its last analysis, is this:

May the United States, as the representative of those claimants before its bankruptcy court to whom the funds in dispute would have gone, had such erroneous orders not been made, here, now, in these purely collateral actions, have such erroneous orders on which the claims of the referees were allowed and paid re-examined and corrected to the use and for the benefit of private parties litigant, who failed, neglected, or refused in the time, manner, and form by the law provided to have said orders reviewed for error?

An examination of the adjudicated cases discloses many instances in which the government, in the exercise of a power expressly conferred by the law, or in the exercise of power implied from the law, as the representative of a class in which it has a special interest, or in the performance of some public duty, has appeared as a party litigant in such representative capacity as it must appear in these actions in order to recover. Of such nature are all those suits brought by the government to cancel patents to a portion of the public domain, to recover or control the alienation of lands belonging to its Indian wards, to cancel judgment of naturalization, letters patent, and the like matters of equitable cognizance. United States v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747; United States v. American Bell Telephone Co., 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450; United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820; Causey v. United States, 240 U. S. 402, 36 Sup. Ct. 365, 60 L. Ed. 711.

Again, it has been held, in certain cases wherein a public official acting under authority of the government is required to give an official bond running to the government to account for and pay over to those entitled to receive moneys coming into his hands as such official, the government may institute an action on such official's bond for the use and benefit of all those entitled to receive moneys coming into the hands of such officer, for which he has failed or refused to account and pay over, but which he has appropriated to his own use under

such circumstances as constitute a clear breach of the conditions of the bond, and this on the ground and for the reason that a legal title and right of action in such case is by the terms of the 'bond vested in the United States. Such was the case of United States v. Abeel, 174 Fed. 12, 98 C. C. A. 50, cited and relied upon by plaintiff in these actions. Said case was an action brought by the government to recover on the official bond of the clerk of a federal court for the benefit of those entitled to receive the moneys coming into the hands of the clerk under orders of the court, not as an award of fees which the clerk was entitled to charge and collect for the performance of official duties, but as the custodian of funds in the hands of the court, which the clerk, under no order of court, was entitled to receive and appropriate to its own use either as an individual or in his official capacity for the benefit of the government. The condition of the bond of the clerk broken in such cases reads as follows:

"Now, if [said clerk and his deputies] shall * * * properly account for all moneys coming into his hands as required by law," etc.

In delivering the opinion for the court, Shelby, Judge, among other things, in United States v. Abeel, said:

"The bond sued on is payable to the United States. The legal title, therefore, to whatever sum is due for a breach of the bond, is in the government. Under the ancient common law, no action whatever could be maintained on the bond at law, except by the payee named in the bond. As modified by statutes and decisions in most jurisdictions, others having equitable interests are permitted to assert them at law, but they are usually required to do so in the name of the payee. This is true, even where the payee is entirely without pecuniary interest, and is the mere holder of the legal title. Therefore, in the absence of a statute changing the rule, this action could only be brought in the name of the government, the payee in the bond, and the only question in this aspect of the case is whether or not it is a fatal defect to fail to name the person or persons entitled to the fund, and to aver that the suit is for his or their use. When we consider that the petition fully states the facts, and shows that it would be impracticable to name all who may be entitled to some small portion of the fund, this objection seems technical and wanting in merit and substance," etc.

Cases of this and the like character are the nearest approach to the cases at bar diligent counsel for the government have been able to find in the reported cases and place on their briefs. Are they controlling in the cases at bar, either in point of principle or fact?

One apparent distinction may be noted. All moneys coming into the hands of a clerk of the federal court of this country by way of compensation for his official services as clerk under the law is the property of the government and as such must be turned over to the government. On the contrary, all the fees and compensation of a referee in bankruptcy coming into his hands is his individual property. In an order of the court requiring funds to be paid over to the clerk of the court inheres no finding or determination by the court that the title to such fund, or any part thereof, shall by compliance with the order pass to the clerk. On the contrary, when an order is made by the court that any moneys arising out of an estate being administered in bankruptcy shall be paid to or received by a referee for services by him performed

in his official or other capacity as an officer of the court under the terms of the Bankruptcy Act passes title to such fees or compensation when paid absolutely to the referee, unless such title by future order of the court, or on review, be divested, and all orders of the referee himself are subject to review for error by the court. Hence it is, the obligation required to be given by a referee in bankruptcy contains no condition whatever to account for any moneys coming into his hands, and this for the reason none are thought to come into his hands to which he is not entitled by the law. The sole condition of a referee's bond reads, as follows:

"Now, therefore, if the said ——— shall well and faithfully discharge and perform all the duties pertaining to the said office of referee in bankruptcy, then this obligation to be void; otherwise, to remain in full force and virtue."

It has been many times held the sovereign in its representative capacity has no implied power to demand a general accounting for the purpose of impounding funds collected in excess of that by law allowed for the benefit of individuals entitled thereto, because the state, through its public officials, should not so assist either party in a private controversy. Oklahoma v. Atchison, Topeka & Santa Fé Ry. Co., 220 U. S. 277, 31 Sup. Ct. 434, 55 L. Ed. 465; State ex rel. Barker v. Chicago & Alton R. R. Co., 265 Mo. 646, 178 S. W. 129, L. R. A. 1916C, 309; People v. Albany & S. R. R. Co., 57 N. Y. 164; People v. Ingersoll, 58 N. Y. 1, 17 Am. Rep. 178; In re Benton, 66 Vt. 507, 29 Atl. 805; State ex rel. v. Dunbar, 53 Or. 45, 98 Pac. 878, 20 L. R. A. (N. S.) 1018.

In M., K. & T. R. R. Co. v. No. R'd., etc., Com'rs, 183 U. S. 53, 22 Sup. Ct. 18, 46 L. Ed. 78, Mr. Justice Brewer, delivering the opinion for the court, said:

"It is true that the state has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the state, as an organized political community, a party in interest in the litigation, for if that were so the state would be a party in interest in all litigation, because the purpose of all litigation is to preserve and enforce rights and secure compliance with the law of the state, either statute or common. The interest must be one in the state as an artificial person."

In United States v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747, Mr. Justice Miller, delivering the opinion for the court, said:

"The government must show that, like the private individual, it has such an interest in the relief sought as entitles it to move in the matter. If it be a question of property, a case must be made in which the court can afford a remedy in regard to that property; if it be a question of fraud, which would render the instrument void, the fraud must operate to the prejudice of the United States; and if it is apparent that the suit is brought for the benefit of some third party, and that the United States has no pecuniary interest in the remedy sought, and is under no obligation to the party who will be benefited to sustain an action for his use, in short, if there does not appear any obligation on the part of the United States to the public, or to any individual, or any interest of its own, it can no more sustain such an action than any private person could under similar circumstances."

True it is, by act of Congress of July 1, 1916 (39 Stat. 311, c. 209), the agents of the Department of Justice investigate the acts of referees

and trustees in bankruptcy as they do the accounts of clerks, marshals, and other officers of our national courts. But such investigation as declared by the act is made for the purpose of "the detection and prosecution for crime," and not for the purpose of laying the foundation for a civil action on the part of the government.

For the above reasons I am inclined to the opinion the plaintiff in these cases does not show by its petitions such a legal title or right to the moneys in controversy as authorizes it to bring and prosecute these actions. However, over and above all, there appears another vital objection to the prosecution of these present actions by the government.

[2, 3] As has been seen, the funds herein sought to be recovered by the government came into the hands of defendant referees under and in pursuance of orders made by judicial officers in the conduct of judicial proceedings over which the courts of bankruptcy for this district had full and complete jurisdiction of the subject-matter, the estate being administered therein, of the claims of creditors and others thereto, and with full and ample jurisdiction and power to make all orders, decisions, and decrees with reference to the claims of the parties and said estates, including the allowance of compensation to the referees as officers of said courts under and within the provisions of the Bankruptcy Act. The allowance of claims of any and all natures against an estate being administered in bankruptcy is subject to review for error therein at the suit of necessary parties thereto and interested therein. An order allowing or disallowing any claim of any character against an estate in bankruptcy is a judicial order. The jurisdiction and power to make a judicial order, decision, or decree includes the power to make it binding and enforceable until reversed or set aside by some appropriate tribunal established for that purpose. The jurisdiction and power to make judicial decisions includes the power to decide wrong as well as right, and to make a wrong decision binding as firmly as a right one, until reviewed or changed for error.

Any and all the matters of which the government here complains could, if erroneous, have been corrected on review. That which the government presents in these cases is not that defendant referees have in their possession funds to which they have no right or title, or that they or the court under whose orders titles to the funds passed to the referees have acted corruptly in any manner, or that defendant referees have wrongfully appropriated to their own use funds not adjudged to them. On the contrary, the claim of the plaintiff merely is that the judicial orders made allowing the fees as compensation to the referees are not by the Bankruptcy Act, properly construed, allowable under its terms; that is to say, that said orders are simply erroneous. However, no obligation was given by either the defendant referees or the able court by whom they were appointed, guaranteeing either the government or private parties litigant against errors of either law or fact. The law does provide a method for the correction of such judicial errors. Such method provided was not followed. In my judgment, if errors were committed in the making of the orders granting the allowances complained of to the defendant referees in these cases, they cannot be corrected in these purely collateral actions at law for

the benefit of those who had their day in court as private parties litigant, but slept on their rights until they cannot now be heard to complain, and, indeed, are not complaining.

It has been many times held bonds or obligations of the nature set forth in these actions in and of themselves neither create nor give any right of action to the obligee therein named, or to the use of the persons for whom given. The obligation out of which the cause of action arises for its breach must rest in the law itself. The bonds given by the referees impose no new or additional obligation on the referees. The bonds are in the nature of a collateral security given by the referees to insure their faithful performance of the duties imposed by law. Ryus v. Gruble, 31 Kan. 767, 3 Pac. 518; Spokane County v. Prescott, 19 Wash. 418, 53 Pac. 661, 67 Am. St. Rep. 737; City of Butte v. Goodwin, 47 Mont. 155, 134 Pac. 670, Ann. Cas. 1914C, 1012. Hence referees in bankruptcy are by the terms of the Bankruptcy Act required to give an obligation conditioned as above stated to insure the faithful performance of their duties as ministerial officers, and not their acts done in a judicial capacity. In Randle v. Brigham, 7 Wall. 523, 19 L. Ed. 285, Mr. Justice Field, delivering the opinion for the court, said:

"Now, it is a general principle, applicable to all judicial officers, that they are not liable to a civil action for any judicial act done within their jurisdiction. In reference to judges of limited and inferior authority, it has been held that they are protected only when they act within their jurisdiction. If this be the case with respect to them, no such limitation exists with respect to judges of superior or general authority. They are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, unless perhaps where the acts in excess of jurisdiction are done maliciously or corruptly. This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice. Any other doctrine would necessarily lead to the degradation of the judicial authority and the destruction of its usefulness."

See, also, Alzua v. Johnson, 231 U. S. 106, 34 Sup. Ct. 27, 58 L. Ed. 142; White v. Morse, 139 Mass. 162, 29 N. E. 539; Butler v. Potter, 17 Johns. (N. Y.) 145; State ex rel. v. Jackson, 68 Ind. 58.

As a necessary sequence the orders of allowance to the defendant referees in these cases were made in the exercise of a judicial duty or power. Even if it be conceded, for the purpose of argument, such orders were erroneous under the terms of the Bankruptcy Act, they may not by this court be reviewed or corrected in these purely collateral actions, nor may the bondsmen be held liable to an action thereon by the plaintiff after the estate in which the orders were made and the fees paid to the referees is finally closed. In re Allert (D. C.) 173 Fed. 691; United States v. Sondheim (D. C.) 188 Fed. 378; In re Tebo (D. C.) 101 Fed. 419.

It follows the several demurrers interposed by the defendants to the petitions of plaintiff, for the reasons stated, must be sustained. It is so ordered. Nothing herein to be construed as either approving or disapproving the allowances made to the respective referees, defendants herein. That question is not considered.