## JENKS TP. POOR D. v. SHEFFIELD TP. POOR D.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF WARREN COUNTY.

Argued May 8, 1890—Decided May 26, 1890.

[To be reported.]

1. The act of June 4, 1879, P. L. 78, was intended to establish a general system for the relief and employment of the destitute poor throughout the state, and its general plan or purpose is that each county shall be or become a single poor district; it does not, however, immediately abrogate the office or authority of township overseers of the poor.

2. These are to continue until the county commissioners of the particular county have provided a place for the accommodation of the poor; whether, however, by reason of thus tending to produce local results, the act is wholly unconstitutional, not decided, though it would seem that the prohibition of local or special legislation does not extend to the affairs of poor districts.

3. At all events, said act cannot be held constitutional in part, and in part unconstitutional: its provisions were obviously intended to operate as a whole; and, moreover, in view of the constitutional limitations upon the creation of municipal indebtedness, it would seem impossible, while setting aside §§ 3 and 4 as invalid, to sustain the other sections.

(a) The act of March 31, 1868, P. L. 535, required township-road commissioners in Warren county to discharge the duties of overseers of the poor, "so far as their care and maintenance is concerned, until such poor are committed and delivered to the Rouse hospital," and empowered them to increase the road taxes, or to levy a separate poor tax, for that purpose:

4. Said act did not create the township-road commissioners overseers of the poor and erect them into a separate corporation as such, but merely imposed the care of the poor upon them in their capacity as road commissioners, and it rendered the township-road fund responsible for any debts incurred under it.

5. The repeal of said act by the act of May 9, 1889, P. L. 155, did not abate a proceeding then pending in the Court of Quarter Sessions for the recovery by a poor district in another county, from a township in Warren county, of expenditures made in relieving a poor person, settled in said township, who had never been committed to the Rouse hospital.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 350 January Term 1890, Sup. Ct.; court below, No. 17 March Term 1889, Q. S.

Statement of Facts.

On February 7, 1889, C. M. Carringer and John Sallade, over-seers of the poor of the township of Jenks in Forest county, presented to the court below their petition averring that under the provisions of the acts of April 9, 1844, P. L. 230, and March 31, 1868, P. L. 535, the commissioners of roads and highways of the township of Sheffield, in Warren county, were required to perform in said township the duties of overseers of the poor; that about September 29, 1887, certain persons, coming out of the district of Sheffield into the district of Jenks, fell sick in and became a charge upon the latter district, and, in caring for and maintaining them during their sickness, in pursuance of an order of relief duly made, the petitioners as overseers of Jenks township necessarily expended the sum of $91.04; that said paupers had a settlement in said township of Sheffield, acquired by the payment of public taxes therein for the years 1884 to 1887 inclusive, but that the commissioners of Sheffield township, after due notice, refused to pay to the petitioners any part of the moneys so expended; praying for a rule upon the said commissioners to show cause why they should not be compelled by mandamus to pay said moneys. A rule to show cause was thereupon granted as prayed for.

On May 18, 1889, the respondents demurred to the petition, assigning, as causes of demurrer, in substance: (1) that the acts of the petitioners as overseers of the poor in the township of Jenks were unauthorized and void, because by the general act of June 4, 1879, P. L. 78, the entire county of Forest was erected into a single poor district; and (2), that by said act the county of Warren was created a single poor district and the poor district of Sheffield township abolished. The petitioners having filed a joinder, the court on September 2, 1889, after argument, overruled the demurrer.[1]

Thereupon the respondents answered the petition, averring in defence thereto that, prior to the alleged furnishing of support and maintenance, and at all times since, the county of Forest, embracing the township of Jenks, constituted a single poor district, by provision of the laws of this commonwealth, and the petitioners possessed no legal rights as overseers of the poor; and the county of Warren, embracing the township of Sheffield, likewise constituted a single poor district, and was so created by the special acts of April 8, 1864, P. L. 438, and

Opinion of Court below.

April 4, 1866, P. L. (1867) 1412, and by the laws of this commonwealth; that, before the cause of complaint arose, the county commissioners of Warren county had erected a poor house to which all the poor of the county had been removed, and the road commissioners of the various townships had ceased and were not required to exercise the functions of overseers of the poor; that, since the commencement of these proceedings, the special act of March 31, 1868, P. L. 535, was expressly repealed by the act of May 9, 1889, P. L. 155; and that the respondents had in their hands no funds raised for the support of the poor, and no taxes for that purpose had been levied by the authorities of Sheffield township since the formation of Warren county poor district.   The respondents therefore prayed to be dismissed, etc.

On November 25, 1889, the petitioners moved the court to make the rule absolute, for want of a sufficient answer.

After argument, the court, BROWN, P. J., on February 17, 1890, filed the following opinion and decree:

At the time the overseers of Jenks township incurred the expenses for which they ask to be reimbursed, such township was a single poor district.   We say so, because we are of the opinion that the act of June 4, 1879, P. L. 78, did not ipso facto make the county of Forest a single poor district.

By the special acts of assembly of April 8, 1864, and April 4, 1866, the county of Warren was made a single poor district, and the duties and functions of overseers of the poor devolved upon the commissioners of the Rouse estate, the county commissioners by virtue of their office being the commissioners of the Rouse estate by act of April 5, 1862.   By act of March 31, 1868, the road commissioners of the several townships of Warren county are made overseers of the poor within their respective districts, until such poor are committed and delivered to the Rouse Hospital, and the road commissioners are authorized to increase the road taxes to an amount sufficient to carry out the provisions of the act, or, if they deem it expedient, to levy a separate poor tax.

The expenses claimed by the Jenks overseers were incurred and this proceeding commenced while the act of 1868 was in full force.   In passing upon the act of 1868, in the case of the

Opinion of Court below.

Rouse Est. v. Poor Directors, 118 Pa. 1, the Supreme Court say: "Its obvious effect was to re-enact the several boroughs and townships of the county into poor districts, and to impose on them all the duties of overseers of the poor until they are delivered to the Rouse Hospital."

The act of 1868 was repealed by the act of May 9, 1889, P. L. 155, but the repealing act contained no provision for the payment of liabilities previously existing against the township poor districts. It imposed no liability therefor on the county poor district, and had it done so, it is at least doubtful whether such a provision would be valid. There is no averment against the justice of the claim of the petitioners, and we think no doubt of the liability of the township respondent. The repealing act of 1889, does not take away the jurisdiction of the court, and as it provides no other remedy we think the proceeding should go on as if that act had not been passed.

The averment of the answer that respondents have no funds in their hands raised for the support of the poor, and that no taxes for that purpose have been levied cannot avail them. The liability having accrued while the act of 1868 was in force, we think it became a township debt payable from the road taxes, especially where no separate poor tax has been levied.

The claim in this case is for relief to a man and wife whose settlement was in Sheffield, but who had moved to Jenks township, and there fell sick. The act of June 25, 1885, relates only to injured indigent persons and has no bearing on the case before us.

The rule to show cause why a mandamus as prayed for should not issue is made absolute, and it is ordered that respondent pay to complainant the sum of $91.04 with interest from December 1, 1887, and also the costs of these proceedings.[2]

Thereupon the respondents took this appeal, specifying that the court erred :

1. In overruling the demurrer to the petition.[1]

2. In entering the decree in accordance with the prayer of the petition, and ordering the payment of $91.04, with interest and costs.[2]

3. In not dismissing the petition.

*Mr. Charles H. Noyes* (with him *Mr. Watson D. Hinckley*), for the appellants:

1. The act of April 8, 1864, P. L. 438, and its supplement of April 4, 1866, P. L. (1867) 1412, abolished the township and borough poor districts in Warren county, made the county a single poor district, and transferred to the county commissioners, as ex officio commissioners of the Rouse estate, the powers formerly vested in and laid upon the overseers of the poor of the several districts of the county. Under those acts, a portion of the charitable bequest made by Henry R. Rouse was expended in erecting what is, to all intents and purposes, a county poor house, though called the Rouse Hospital. By act of March 31, 1868, P. L. 535, certain duties respecting the poor were laid upon township and borough officers in said county, and this court decided in Rouse Est. v. Poor Directors, 118 Pa. 1, that its effect was to re-erect the several boroughs and townships into poor districts, and impose on their officers the duties of overseers of the poor, until the poor under their care were committed and delivered to the Rouse Hospital. That case was decided entirely upon the act of 1868. The general act of June 4, 1879, P. L. 78, was not brought to the notice of the court. We now submit that it necessarily repealed the act of 1878.

2. The first section of the act of 1879 absolutely creates each county in the state a poor district. There is no proviso that this section shall not take effect immediately, nor is there any saving of local laws creating smaller districts. On the contrary, the special saving, in the last section, of local laws relating to poor houses, evidences the intention that each county shall at once be a poor district, without any exceptions. An implication seems to arise from §§ 9, 10 and 18, that township and borough officers are to continue to exercise some functions, until a poor house shall have been erected under the other sections of the act, but such provisions do not apply to Warren and other counties which already possessed poor houses. The construction put upon the act by the court below is, in effect, that § 1 does not go into operation until a poor house has been erected, under the provisions of that law; but in that case the act is local, as it could never operate in counties having poor houses already under other laws, nor in

any county until two thirds of the overseers think proper to petition the court to order an election, and the people vote to build a poor house. It would therefore be repugnant to § 7, article III. of the constitution: Frost v. Cherry, 122 Pa. 417; Scranton Sch. D.'s App., 113 Pa. 176.

3. Such a construction will be adopted, if possible, as will sustain a law, rather than one which would avoid it. All presumptions are in favor of its constitutionality: Craig v. First P. Church, 88 Pa. 42; and nothing but a clear violation of the constitution will justify pronouncing it void: Speer v. School Directors, 50 Pa. 150; Hilbish v. Catherman, 64 Pa. 154; Penna. R. Co. v. Riblet, 66 Pa. 164. Unless the court import into the act of 1879 the limitation that it is not to operate until the people have voted and the commissioners have erected a poor house, its provisions are all constitutional. The matter to be submitted to the people is, not whether the law shall operate, but whether a certain expense shall be incurred. If any of the provisions of the act are repugnant to the positive language of § 1, they are formal rather than substantial, and may well be regarded as directory; and if the act is incapable of such a construction as will give effect to it as a whole, without transgressing the constitution, the provisions first mentioned in its title, and first declared in the body of it, may well stand alone. Though part of an act be unconstitutional, the remainder is not necessarily so: Cooley's Const. Lim., 178; Commonwealth v. Potts, 79 Pa. 164. It is submitted, however, that the law can stand as a whole.

4. The result of the act of 1879 is that neither plaintiff nor defendant has any standing in court. Forest county, as a poor district, should have relieved the poor persons who became chargeable in Jenks township, and should have proceeded against Warren county, instead of against Sheffield township. And even if the special act of March 31, 1868, P. L. 535, should be held in force, the judgment must be reversed, because Jenks township is not the proper complainant. There is another reason why this proceeding cannot be maintained against the poor district of Sheffield township, viz., that the act of 1868, even if it can be regarded as in force after the passage of the act of 1879, was expressly repealed by the act of May 9, 1889, P. L. 155. The road commissioners have no

longer any power to levy poor taxes or apply any taxes to the poor. But for the constitutional prohibition, the legislature doubtless would have provided some way of settling up the poor business; but they have not, and the court cannot do so. Possibly the repeal ipso facto transferred all the duties, rights and liabilities of the township and borough districts to the new district, composed of the county; but, however that may be, the township district died when its breath was stopped by the legislature.

*Mr. D. I. Ball* (with him *Mr. C. C. Thompson*), for the appellees:

1. The county of Forest has no poor house and has taken no steps to procure one under the act of June 4, 1879, P. L. 78. Hence the office of overseers of the poor still exists in that county, as appears by §§ 10 and 18 of that act. Warren county has a poor house, and a complete poor system of its own, under local statutes which have received judicial construction in Rouse Est. v. Poor Directors, 118 Pa. 1. The act of June 4, 1879, does not immediately abolish the poor district of the township of Jenks, nor create the poor district of the county of Forest; but, manifestly, until the contingency mentioned in § 18 arises, the office of overseers of the poor exists, and consequently the township poor district continues. The complaint was therefore made by the proper parties in this case. Probably it will not be denied that if the decision in Rouse Est. v. Poor Directors, supra, be the law as to Warren county, the complaint is made against the proper party. But, it is suggested that the act of 1879 was not called to the attention of the court in the case cited; that act, however, could not have produced a different result, as by § 21 thereof all local acts governing the county of Warren were saved from repeal. The act of March 31, 1868, P. L. 535, which is a local act, remains, therefore, in full force.

2. As the act of 1879 applies neither to the plaintiff nor the defendant, no question as to its constitutionality properly arises, and we pass that subject by. We had a perfect cause of action, and the right parties were in court, at the time the act of 1868 was repealed by the act of May 9, 1889, P. L. 155. Are we now to be turned out of court, because the repealing

Opinion of the Court.

act contained no saving clause? The argument for the appellants is based upon the mistaken assumption that the road commissioners of Sheffield constituted a separate corporation in the discharge of their duties under the act of 1868. Under the authority thereby given, they could pay this claim out of the ordinary road fund, and they may do so still. It neither was nor is necessary to levy a separate poor tax; that was optional with them under the act of 1868. By the repeal of that act, they are relieved of the further care of the poor, and the power to levy a separate tax for the poor is taken from them; but they still have the duty of paying any debts incurred by the township while the act was in force. The repealing act did not take away the jurisdiction of the court. There was no repeal or change of the remedy; but, if there were, the rule is that proceedings continue upon a repeal or change of the remedy merely: Hickory Tree Road, 43 Pa. 139; Bedford v. Shilling, 4 S. & R. 403.

OPINION, MR. JUSTICE CLARK:

On or about the 29th September, 1887, one Ernest Eiffert and his wife came out of the district of Sheffield, in Warren county, where they were legally settled, into the district of Jenks, in Forest county, and there became chargeable. After such relief as their condition required had been given, their legal settlement was ascertained, and this proceeding, in the nature of a mandamus, was instituted by the overseers of Jenks against the commissioners of Sheffield to recover the amount expended.

In response to the rule, the commissioners set up a defence as follows: 1 That the act of June 4, 1879, P. L. 78, created a single poor district of Forest county, and abolished the poor district of Jenks township; 2 that, Warren county having erected a county poor house and removed all its poor thereto, prior to the passage of the act of 1879, the said act created a single poor district of Warren county, and abolished the poor district of Sheffield township; 3 that, if the poor district of Sheffield township existed after the passage of the act of 1879, it was abolished by the act of May 9, 1889, P. L. 155, which repealed the act of March 31, 1868, P. L. 535. The rule for a mandamus was, however, made absolute, and it was ordered that the respondents pay to the complainant the sum demanded,

with interest. To this action and order of the court an appeal has been entered here, and the same questions are presented for the determination of this court.

The act of June 4, 1879, was intended to establish a general system for the relief and employment of the destitute poor throughout the state. The general plan or purpose of the act is that each county shall be or become a single poor district; that real estate shall be purchased, and suitable buildings erected thereon, and that as soon as the buildings are completed, and the county commissioners are prepared to accommodate the poor of the district, upon notice given, the poor shall be transferred to their custody and care, and thereupon the duties of the overseers of the poor shall be performed by the county commissioners. But the practical provisions of this act, it will be observed, do not come into effect, so as to abrogate the office or to dispense with the authority of the overseers, until the county commissioners, under the conditions of the act, have provided a place and are prepared to accommodate the poor thus to be transferred.

It does not appear that the county commissioners of the county of Forest have as yet taken any steps towards the erection of a poor house, or that they have made any other suitable provision or preparation for the relief or employment of the poor of the county; and it follows that the overseers throughout the county are still charged with the performance of all the duties appertaining to that office, since the passage of the act of 1879, as before. The eighteenth section of that act provides that "after delivery of the poor to the commissioners as before provided, the overseers of the poor in the townships and boroughs embraced in said districts shall cease to act as overseers of the poor, except so far as may be necessary to levy and collect tax, settle the accounts, and pay debts already incurred."

But it is said that, if it be held that the provisions of the act of 1879 are only to come into practical operation in the respective counties upon a vote of the people therein to that effect, it may produce local results merely; and that such a construction would condemn the act, or a part of it at least, as a local or special law and therefore unconstitutional. If upon any ground the act is wholly unconstitutional, it is plain that it cannot have the effect the appellant claims for it: if constitutional, it saves the office of overseer until its provisions are brought into

full effect; if unconstitutional, it is void, and can have no effect
to abrogate that office.   The contention of counsel is, however,
that it may be held to be constitutional in part, and in part
unconstitutional.   But, from the very nature of the several
provisions of the act of 1879, it is obvious that they were in-
tended to operate as a whole; and, especially in view of the
limitations imposed by the constitution upon the creation of
municipal indebtedness, it would seem to be impossible to sus-
tain the first and some of the succeeding sections as constitu-
tional, and set aside the third and fourth as unconstitutional.
The effect of this, in some of the counties, might and probably
would be to abrogate the present system for the support of the
poor, and to render it wholly impracticable to provide any
other.   Moreover, it would appear that the limitations upon
the powers of the legislature as to local or special legislation
do not extend to the regulation of the affairs of poor districts.
The affairs of townships do not of necessity include the affairs
of either the school or poor districts embraced within the same
boundaries.   The provision of the constitution, article III., § 7,
is that " the general assembly shall not pass any local or special
law," etc., "regulating the affairs of counties, cities, townships,
wards, boroughs, or school districts."   It is a very significant
fact that, whilst school districts are expressly included within
the restriction, poor districts are plainly omitted.   The over-
seers of Jenks township, under the sixteenth section of the act
of March 9, 1771, constitute a quasi corporation, by that name,
distinct from the township of Jenks, with the right to sue and
to be sued; process in this form being properly served upon
the overseers, whilst process against the school district is served
upon the school directors, and that against the township upon
the supervisors.   The convention, being conversant with the
manifold forms in which the public charity was dispensed,—in
county poor houses and in district poor houses organized under
both general and special laws, in hospitals and homes supported
by contributions both public and private, and through the or-
dinary agency of the overseers or directors of the poor,—may
have deemed it unwise to interrupt the course of legislation on
this subject, or to restrict the relief and employment of the
poor to any one uniform or general system for the whole state,
preferring rather that the hand of charity might be freely ex-

tended in any form which the legislature from time to time might provide. However this may be, the overseers of the poor of Jenks township would appear to be the proper parties complainant in this case.

A fund many years ago bequeathed by Henry W. Rouse to the county of Warren for the benefit of the poor of that county was expended in the erection of the Rouse Hospital. The income of this charitable estate being inadequate for the support of the poor of the county, the deficiency is provided for by taxation; and by the fourteenth section of the act of 1864, P. L. 442, the charge of all the poor in the county of Warren, and the expense of their support and maintenance, were imposed on the "Directors of the Rouse Hospital." By the act of April 4, 1866, P. L. (1867) 1412, the office of "Director of the Rouse Hospital" was abolished, and the duties transferred to the "Commissioners of the Rouse estate," under which name they were incorporated. But by the act March 31, 1868, P. L. 535, it was provided that the burgess and council of the boroughs, and the road commissioners of the townships, should be authorized and required to discharge all the duties of overseers of the poor within their respective districts, so far as their care and maintenance is concerned, until such poor are committed and delivered to the Rouse Hospital; and for this purpose the burgess and council or the road commissioners, as the case may be, were "authorized to increase the borough and road taxes within their respective districts to an amount sufficient to enable them to carry out the provisions of this act, or, if they deem the same expedient, may levy a separate poor tax for that purpose." "The obvious effect of this legislation," as we said in Rouse Est. v. Poor Directors, 118 Pa. 1, "was to re-erect the several boroughs and townships of the county into poor districts, invest the several officers named with all the powers, and impose upon them all the duties, of overseers of the poor, in their respective districts, until the poor under their care are committed and delivered to the Rouse Hospital." Whilst the duties and obligations of the commissioners of roads, etc., of Sheffield township thus remained, these proceedings were instituted, and, as Ernest Eiffert and his wife were never committed to the Rouse Hospital, or delivered into the care of the commissioners of the Rouse estate, the responsibility for their

relief remained with the road commissioners of Sheffield; and upon this showing, Sheffield was clearly liable to Jenks for the amount necessarily expended in this behalf.

But by the act of May 9, 1889, P. L. 155, the act of 1868, above referred to, was repealed, and it is contended that thereby the complainants' right of recovery fell; that the poor district of Sheffield was thereby abolished; that the commissioners of roads, etc., were discharged of their office as overseers, and can no longer exercise the rights, nor will they be held to the responsibilities, of that office; and that the complainants are therefore without remedy. This ground of defence is not tenable. Whilst the road commissioners of Sheffield, under the act of 1868, performed certain duties ordinarily belonging to the overseers of the poor, they were not overseers of the poor; they were road commissioners, and were authorized to furnish relief from the road fund, and to increase the road taxes to an amount sufficient to enable them to carry out the provisions of that act. The debt to Jenks poor district is a debt of the township payable out of the road fund; and, although relieved of their duties as overseers by the act of 1889, the responsibility of the road commissioners remains for debts existing when that act was passed. The road commissioners are the representatives of the township, and are the proper parties upon the record in a suit for their recovery.

> The proceedings of the Quarter Sessions are therefore affirmed.