UNITED STATES FIDELITY & GUARANTY CO. v. COMMONWEALTH OF PENNSYLVANIA, to Use of CLARION COUNTY POOR DIST.

(Circuit Court of Appeals, Third Circuit. February 8, 1911.)

No. 62.

1. COUNTIES (§ 98*)—OFFICIAL BONDS OF COUNTY COMMISSIONERS—CONSTRUCTION—PENNSYLVANIA STATUTE.

The liability of an official bond given by a county commissioner in Pennsylvania under Act Pa. May 24, 1878 (P. L. 118), conditioned for "the faithful discharge of all duties imposed upon him by law," extends to the duties imposed on him as a poor district officer by Act Pa. June 4, 1879 (P. L. 78), which created each county in the state into a poor district under the control and management of the county commissioners

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

who are authorized to purchase property and erect buildings, etc.; their accounts to be audited by the county auditors.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 98.*]

2. COUNTIES (§ 98*)—COUNTY COMMISSIONERS—OFFICIAL BONDS.

The provision of Act Pa. May 24, 1878 (P. L. 118) that the official bonds of county commissioners shall be taken in the name of the commonwealth "for the use of the county," does not preclude a recovery on such a bond for the use of the county as a poor district, into which each county is created by Act Pa. June 4, 1879 (P. L. 78).

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 98.*]

3. BONDS (§ 124*)—PLEADING—EFFECT OF DECLARATION OF USE.

A declaration of use in a statement of claim in an action on a bond is not a part of the pleading and has no force to make an issue different from what it would have been if the phrase had been left out.

[Ed. Note.—For other cases, see Bonds, Dec. Dig. § 124.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action at law by the Commonwealth of Pennsylvania, for the use of the County of Clarion at the suggestion and now for the use of the Clarion County Poor District, against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Don C. Corbett, Harry E. Rugh, and Stonecipher & Ralston, for plaintiff in error.

J. T. Reinsel, F. J. Maffett, H. M. Rimer, and Lewis Collner, for defendant in error.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

BUFFINGTON, Circuit Judge. This case of the Commonwealth of Pennsylvania, for the use of the county of Clarion, at the suggestion and now for the use of the Clarion county poor district, against the United States Fidelity & Guaranty Company, was begun in the court of common pleas of the county of Clarion. Thereupon the defendant, a citizen of Maryland, had the case removed to the United States Circuit Court, where it was tried and a verdict found for the plaintiff. On entry of judgment on such verdict the defendant sued out this writ. The action was to recover for the breach of the official bond of Saxton, a commissioner of Clarion county, on which bond the defendant was surety.

[1] Substantially the question involved is: Does the liability of an official bond given by a county commissioner in Pennsylvania, under the act of May 24, 1878 (P. L. 118), "for the faithful discharge of all duties imposed upon him by law," extend to the performance of duties imposed upon such commissioner as a poor district officer, by the act of June 4, 1879 (P. L. 78)?

The bond in question is an official bond as county commissioner given in pursuance of an act of 1878, which provides as follows:

"That the county commissioners of the several counties of this commonwealth hereafter elected, shall before entering upon their official duties each give bond, with sureties to be approved by the court of quarter sessions of

the same county, or by one of the judges thereof, and in such penalty as the court shall deem sufficient. not less than two thousand dollars each, *for the faithful discharge of all duties enjoined upon them by law*, and for the faithful and legal appropriation of all county and other moneys which said commissioners have any authority to draw out of the county treasury, upon checks or orders given by them, or over which they have control; the said bonds shall be taken in the name of the commonwealth of Pennsylvania for the use of the county."

At the time this statute was passed, the several townships and boroughs of Clarion county were the only poor districts in Clarion county, and the commissioners of such county had nothing to do with the care of the poor. In 1879 a sweeping change in the poor system of the state was made by the act of June 4, 1879, whereby it was provided:

"Section 1. Be it enacted, etc. For the purpose of furnishing relief to the poor, destitute and paupers, giving them employment and carrying out the provisions of this act, each county of this commonwealth is hereby created a district, to be known as ———— County Poor District.

"Sec. 2. The commissioners of each county are authorized and empowered to select and purchase real estate within said district, erect thereon buildings, provide tools, machinery and stock, as they in their judgment may deem necessary, proper and sufficient to carry out the purpose and design of this act. The conveyance and title for such real estate shall be taken in the name and for the use of the district mentioned in the first section of this act."

"Sec. 6. The county commissioners and their successors in office shall have control, management and direction of the property purchased as aforesaid, and shall provide all things necessary for the maintenance and employment of the poor of their said district, make repairs and improvements of buildings, cultivate the real estate and use the proceeds of labor of the poor under their charge in their support and maintenance."

"Sec. 8. The treasurer of such county shall be ex officio treasurer of said poor district; he shall receive all moneys belonging to the district, and pay out the same on warrants drawn by the commissioners, who shall fix his compensation for such service. The accounts of the treasurer with the said district shall be audited by the auditors of said county, in accordance with the laws relating to accounts of county treasurer."

"Sec. 11. The said commissioners, shall from time to time receive, maintain, provide for and employ all paupers, poor and indigent persons within their district, entitled to relief and having a settlement therein. The duties heretofore performed by overseers of poor within such districts, shall be done and performed by said commissioners with the same rights and subject to the same penalties. * * *

"Sec. 17. The county commissioners shall keep accurate accounts of all moneys received by them in any way for the purposes of this act, as well as all paid out, including such reasonable expenses as they may incur in carrying out the business, and which they shall be allowed credit for. *All accounts under this act shall be audited by the county auditors.* Said commissioners shall be entitled to charge in their account as compensation the same rate per day for time necessarily employed about the business that they are entitled to receive as county commissioners."

"Sec. 19. The commissioners may require bond with security from any officer or employé appointed by them under this act; it shall be their duty to see that the county treasurer gives bond with surety to secure the safe-keeping and proper payment of all moneys that come into his hands on account of said district, and shall fix the amount of the treasurer's bond."

By proper steps the county of Clarion accepted the provisions of the act, and in pursuance thereof its commissioners, one of whom, Saxton, with the defendant as surety, had duly given the bond here in

suit, dated November 22, 1902, undertook the erection of a county poor-house. By virtue of section 17 of the act, the county auditors audited the accounts of the poor district of Clarion county, growing out of the erection of the poorhouse, and on June 13, 1908, filed their report in the common pleas of Clarion county, and therein, inter alia, surcharged Saxton and his fellow commissioners some $6,600 for sundry overpayments in and about the erection of the poorhouse, "which payments were by said commissioners illegally and fraudulently made." The auditors' surcharges, their report being unappealed from, became judgments of the court. The question before us is whether this breach of duty on the part of Saxton falls within the provisions of his official bond by which he and the defendant obligated themselves to be "held and firmly bound unto the commonwealth of Pennsylvania for the use of the county of Clarion," and which provided: .

"Now the condition of this obligation is such that if the above-bounden John S. Saxton shall faithfully discharge all duties enjoined on him by law as such commissioner, and shall faithfully and legally appropriate all county and other moneys which he as such commissioner shall have authority to draw out of the county treasury upon checks or orders given by him on the county commissioners of Clarion county, or over which either he or they have control, then this obligation to be void, otherwise to be and remain in full force and virtue."

Recovery is resisted: First, on the ground that the Supreme Court of Pennsylvania has decided that the county of Clarion and the poor district of the county of Clarion are different entities; it being contended, therefore, that Saxton's bond did not cover his acts as commissioner with reference to the poor district of Clarion county. And, secondly, on the ground that liability on the bond is limited to the use of the county of Clarion solely as a county and cannot inure to the poor district of the county of Clarion.

We have carefully examined Commonwealth v. Summerville, 204 Pa. 300, 54 Atl. 27, Melvin v. Summerville, 210 Pa. 41, 59 Atl. 483, and Commonwealth v. United States, etc., Co., 220 Pa. 148, 69 Atl. 550, where the general subject-matter of this litigation was involved, and in our judgment none of the questions now before us were there adjudged. Had they been, we should of course be concluded. In Melvin v. Summerville the question was whether in building the poorhouse the approval of the judge of the court must be had as in the case of distinctive county buildings, such as a jail or courthouse, under the act of April 19, 1895 (P. L. 38). The Supreme Court held such approval was not necessary, but that the procedure pointed out by the act of 1879 creating the county poor district was to be followed, and the language used in the opinion of that court that the district is "a separate quasi municipal corporation," that the officers "are not the less district officers and not county officers while acting," must be read in the light of the argument then being made that the poorhouse was not included in the "other county buildings" covered by the act of 1895, which referred to courthouses, jails, and "other county buildings." And in Commonwealth v. United States, etc., Co., supra, where

this bond was before it, the Supreme Court expressly stated it did not decide whether the protection of the same extended to the district.

Such being the case, the question whether the malfeasance here complained of was a breach of any of the "duties enjoined on him by law as such commissioner" is open to us. Now it is certain that Saxton was elected to, bonded for and entered upon, but one office, to wit, that of county commissioner. It is equally certain that until he qualified as county commissioner he had no authority to do any act in reference to the poor district of the county of Clarion. It is also clear that as soon as he qualified as county commissioner he thereby and virtute officii was empowered and constrained to perform certain duties in reference to the poor district. How then can it be contended that when, as county commissioner, he was performing certain duties in reference to the poor district which the law and his office as commissioner compelled him to perform, that he was not, in the words of his bond, performing "duties enjoined on him by law as such commissioner"? If such duties were not enjoined on him by law, by whom or by what were they enjoined? Indeed, there can be no logical escape from the conclusion that, if they were not enjoined on him by law, he was an irresponsible volunteer, and not an official in so acting. The learned judge who tried this case in the circuit court was appointed and qualified as a district judge. He tried this case in the circuit court, sitting therein as a circuit judge ex officio, by virtue of his office as a district judge. Will it be contended for a moment that in trying this case he was not performing "duties enjoined on him by law as such district judge"?

[2] Seeing then that Saxton's malfeasance was a breach of a duty enjoined on him by law as a commissioner of Clarion county, is enforcement of his bond to be denied because the statute provides that the bond "shall be taken in the name of the commonwealth of Pennsylvania for the use of the county," and because the suit here and the liability shown are for the use of the Clarion county poor district?

In Jenks v. Sheffield, 135 Pa. 400, 19 Atl. 1004, and in Commonwealth v. Summerville, supra, the Supreme Court, in construing the act of 1879, said:

"The general plan or purpose of the act is that each county shall be and become a single poor district."

When, therefore, a statutory bond is taken in the name of the commonwealth of Pennsylvania for the use of the county, and, as provided in the act, "each county of the state is hereby created a district," is it reasonable to contend that the beneficial use of this bond shall be restricted to the county as a county and not to extend to the county as a poor district? For, unless the declared beneficial use of the bond to the county extends to the county in all its relations—that is, to the county both in its entity as a county and its entity as a poor district—how can the county of Clarion have and enjoy the whole beneficial use? Indeed, any narrower construction shears the use of its beneficial character. Furthermore, the statement of the use party to a bond is not part of the pleading and is often disregarded as mere surplusage.

186 F.—19

[3] Thus in Boston, etc., Co. v. Grace, 112 Fed. 279, 50 C. C. A. 239—and to it we may add U. S. v. Abeel, 174 Fed. 18, 98 C. C. A. 50, and American Bonding Company v. Allison, 182 Fed. 810—it is said:

"According to respectable authority, the expression of a use may be disregarded as surplusage. Its purpose is to guard the interest of the uses against the adverse action of a nominal plaintiff. It is held that such a phrase has no force to make an issue different from what it would have been if the phrase had been left out. It is held, also, that the declaration of use is not part of the pleading."

But we are not limited to that ground. Our Pennsylvania Provincial Act of 1713 (1 Smith's Laws, p. 85, § 14) provides:

"All such bonds * * * as by * * * law are directed to be given to the Register General * * . * or by any other officers or persons in office whatsoever in this province for the due execution of his or their representative offices or employments, are hereby declared to be to and for the use of and in trust for the person or persons concerned, and that the benefit thereof shall be extended from time to time for the relief and advantage of the party aggrieved by the misfeasance or nonfeasance of the officers that did or shall give the same."

Now this act was declared to be in force in Commonwealth v. Wolbert, 6 Bin. 296, 6 Am. Dec. 452, and we think the principle of that case meets the objection that this bond cannot be enforced for the benefit of the county as a poor district. The bond in that case was given to the commonwealth "for the use thereof," and the court said:

"These are the extractions, and taken literally they indicate a use of the commonwealth only. But perhaps the use may be extended to private persons who may be injured by the official misbehavior of the prothonotary *because the condition extends to all the duties of his office.* We have an old act of assembly made in 1713, by the fourteenth section of which (1 Smith's Laws, p. 85) it is enacted that all bonds given by direction of any law by persons in office for the due execution of their respective offices shall be for the use of and in trust for the persons concerned, and the mode of proceeding on such bonds is pointed out. * * * If private persons have any interest in it then, it must be because, from its nature, it appears to be in trust for them."

The Legislature in framing the act of 1879, which, as said in Melvin v. Summerville, supra, provides "an elaborate and complete system of poor law to carry out the objects set forth in the title," had before it the question of giving bonds. It provided for an additional bond for the county treasurer, as treasurer of the county poor district, but made no provision for a second bond for county commissioners. It therefore follows that the Legislature either meant that the vast expenditures made in the numerous counties of Pennsylvania were to be made by unbonded county commissioners, or else they thought that the bond required of them by the act of 1878 conditioned "for the faithful discharge of all duties enjoined on them by law" would cover the additional duties enjoined upon them by the statute they were then making, to wit:

"The county commissioners of each county are authorized and empowered to select and purchase real estate within said district, erect buildings thereon," etc.

And in view of the provincial statutes quoted and the construction placed thereon by the Supreme Court the Legislature had ground for

believing that the statutory bond of county commissioners provided for by the act of 1878 for the use of the county extended to the benefit of the county as a poor district. Such has been the view on which the affairs of Pennsylvania counties as poor districts have been administered for years, and, as our holding of the bonded liability of county commissioners acting with reference to the poor district is in accord with that firmly established practice, our decision is in line with that salutary principle of interpretation which makes fixed practice its own interpreter and which is referred to in Stuart v. Laird, 1 Cranch. 308, 2 L. Ed. 115. There it was sought to raise the question that the Justices of the Supreme Court had no right to sit as circuit judge ; but the court said :

"To this objection, which is of recent date, it is sufficient to observe that practice, and acquiescence under it, for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer, and has indeed fixed the construction. It is a contemporary interpretation of the most formidable nature. This practical exposition is too strong and obstinate to be shaken or controlled. Of course, the question is at rest and ought not to be disturbed."

Finding no error in the judgment of the court below, it is affirmed, with costs.