LEARY v. MAYOR & ALDERMEN OF JERSEY CITY et al.

(Circuit Court of Appeals, Third Circuit. August 22, 1913. Rehearing Denied November 4, 1913.)

No. 1,598.

1. STATES (§ 12*)—TERRITORIAL EXTENT AND BOUNDARIES.

Under the Compact of 1833 between the states of New Jersey and New York (Act June 28, 1834, c. 126, 4 Stat. 708), providing that the boundary line between the two states shall be the middle of the Hudson river, of the bay of New York, etc., that the state of New York shall have exclusive jurisdiction over all the waters of the bay of New York, subject to New Jersey's exclusive right of property in and to the land under water lying west of the middle of the bay—the territory of the state of New Jersey extends to the middle of New York Bay, and incident to its ownership of such territory is the sovereign power to tax the land under water.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 6–11; Dec. Dig. § 12.*]

---

2. EVIDENCE (§ 25*)—JUDICIAL NOTICE—GEOGRAPHICAL FACTS.

The law will take judicial notice of the universal and unvarying practice of the states to subdivide their entire territory into counties and their counties into municipal districts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 31-33; Dec. Dig. § 25.*]

3. MUNICIPAL CORPORATIONS (§ 25*)—BOUNDARIES—PRACTICAL CONSTRUCTION.

Where the state conveyed submerged littoral land fronting a city, describing it as located in such city, and the grantee assigned the conveyance describing the land in the same way, and the city assessed taxes thereon for approximately 30 years, there was such an assertion, practice, and acquiescence on the part of the state, municipality, and owner, in the assumption that the land was included in such city, as called for the principle of interpretation which makes fixed practice its own interpreter.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 62; Dec. Dig. § 25.*]

4. COUNTIES (§ 7*)—TERRITORIAL EXTENT AND BOUNDARIES.

Under Act N. J. Feb. 22, 1840 (Revision 1877, p. 205, § 42), creating the county of Hudson and defining its boundaries as extending along the boundary line between certain counties to Kill-Van-Kull; thence eastwardly on the boundary line between this state and the state of New York to the Hudson river; thence northwardly on such boundary line between this state and the state of New York up the Hudson river—such county extends into New York Bay to the boundary line between New York and New Jersey.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 3; Dec. Dig. § 7.*]

5. MUNICIPAL CORPORATIONS (§ 23*)—TERRITORIAL EXTENT AND BOUNDARIES.

Act N. J. March 18, 1863 (P. L. p. 306), creating the township of Greenville, described it as bounded on the southeast by "New York Harbor" Act N. J. March 11, 1868 (P. L. p. 314), creating the city of Bergen, described its boundaries as running into New York Bay until it intersects the boundary line of the state of New York; thence southerly "along said boundary line of the state of New York until it intersects the dividing line between the township of Greenville and the city of Bergen." The township of Greenville was subsequently annexed to Jersey City. *Held*, that Greenville extended, and Jersey City now extends, to the New York line in the middle of New York Harbor, notwithstanding the provision that it was bounded "by New York Harbor," since boundaries described by such terms as sea, bay, etc., include land below high-water mark, as far as the grantor owns, and a statute passed with a view to including within some municipal subdivision every part of the state's sovereignty, in order to extend the benefits of government to all its territory, is not to be construed with the same precise accuracy involved in a grant by an individual of a specific part of a larger tract, especially as the Legislature in the act of 1868 assumed that Greenville extended to the midharbor, interstate line.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 52-59; Dec. Dig. § 23.*]

6. CONSTITUTIONAL LAW (§ 284*)—MUNICIPAL CORPORATIONS (§ 957*)—REVIEW OF ASSESSMENT—STATUTORY PROVISIONS—DUE PROCESS OF LAW.

Act N. J. March 30, 1886 (P. L. p. 149), authorizing the legislative body of any city, with the concurrence of the board or body having charge of its finances, to apply to the circuit court for the appointment of commissioners to adjust arrearages of taxes, and providing that the commissioners may examine into and fix and determine as to each parcel of land how much such arrearages and subsequent taxes, if any, ought in the way of taxes, assessment, or water rate, in fairness, equity, and justice

to be laid, assessed, and charged against and actually collected from such land, requiring a report of the commissioners to be presented to the court for approval upon such notice as the court shall direct, and providing that no writ of certiorari shall be allowed to contest or set aside any tax, assessment, or lien determined by the commissioners, or to set aside any proceedings under that act to collect the same, unless the party applying shall give a bond conditioned for the payment of so much thereof as shall be ascertained to be justly payable, or unless application therefor shall be made within six months from the confirmation of the report, does not deny taxpayers due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 893–896; Dec. Dig. § 284;* Municipal Corporations, Cent. Dig. §§ 2015–2022; Dec. Dig. § 957.*]

**7. MUNICIPAL CORPORATIONS (§ 980*)—REVIEW OF ASSESSMENT—CONCLUSIVENESS OF ACTION OF REVIEWING BOARD.**

Where a taxpayer failed to avail himself of the opportunity to have questions as to the amount, scope, lien, and limitation of taxes against his property determined by commissioners appointed under such act, or by the courts empowered to conform and review such action, such questions were settled by the decree of the commissioners, and were not open to review in a collateral action to enjoin a tax sale.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2124–2133; Dec. Dig. § 980.*]

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Bill in equity by Daniel J. Leary against the Mayor and Aldermen of the City of Jersey City and others. From a decree (189 Fed. 419), dismissing the bill, the plaintiff appeals. Affirmed.

Merritt Lane, of Jersey City, N. J., for appellant.

Warren Dixon and James J. Murphy, both of Jersey City, N. J., for appellees.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Daniel J. Leary, a citizen of the state of New York, brought a bill in equity to enjoin Jersey City, a municipality of the state of New Jersey, from selling certain real estate for defaulted taxes. That court, on final hearing, in an opinion reported at 189 Fed. 419, found against the plaintiff, and from the decree dismissing his bill Leary appeals.

From the proofs it appears that on April 30, 1881, the state of New Jersey—acting by its commissioners appointed under the statute of that state of March 31, 1869, which act was a supplement to one of April 11, 1864—by an instrument attached to the bill as "Exhibit 1," conveyed to ti e Morris & Cumings Dredging Company, a corporation of New York, the locus in quo, which was submerged littoral land situate in New York Bay and fronting Jersey City. On February 24, 1904, that company assigned to the plaintiff its interest under the said conveyance of the state. On these lands taxes were assessed by the municipal authorities of Jersey City for the years 1883 to 1905, inclusive, and on the legality of such assessments this case turns. Such legality involves in turn several questions, and to them we now address ourselves seriatim.

[1] The first and underlying one is, Is this submerged land, which abuts the uplands of Jersey City and lies under the waters of New York Bay or Harbor, within the sovereignty and jurisdiction of New Jersey? This question turns on the construction and effect given to the compact between the states of New Jersey and New York. Act June 28, 1834, c. 126, 4 Stat. 708. While it was raised by the bill under the averment "that the lands and premises herein mentioned and described are not within the jurisdiction of the state of New Jersey, and not subject to the sovereignty of said state, and cannot be taxed under the authority of said state, although within the geographical boundaries thereof," such position is not tenable. Not only is there a stipulation "that before the lease of the lands as hereinafter mentioned they belonged absolutely to the state of New Jersey, and were and always had been a part of the public domain," but the question of the jurisdiction and taxing power of the state over such lands was adjudged and upheld by the court of Errors and Appeals of New Jersey in Central R. R. Co. v. Jersey City, 72 N. J. Law, 311, 61 Atl. 1118, a decision affirmed (209 U. S. 473, 28 Sup. Ct. 592, 52 L. Ed. 896) by the Supreme Court of the United States. It is clear, therefore, that the territory of the state of New Jersey extends to the median line of New York Bay, and that incident to the ownership of such territory is the sovereign power to tax the same.

[2] We next turn to the question whether these lands are, for taxing purposes, within the limits of Jersey City. The law will take judicial notice of the universal and unvarying practice of our states to subdivide their entire territory into counties, and their counties into municipal districts. Indeed the existence within a state of any portion of its territory without county or municipal relation is unheard of. But unless this littoral land of New Jersey is within the county of Hudson and within the boundaries of Jersey City, it is in this anomalous, nonmunicipal relation, for it is not contended it has or can have any other municipal relation than with Jersey City. The locus in quo abuts the upland property that was part of the township of Greenville, before that municipality was annexed to Jersey City. The question then resolves itself into ascertaining the water-front boundary of the township of Greenville in the county of Hudson.

[3] In the first place the conveyances on which the plaintiff bases his interest and his right to maintain this bill show an assertion by the state of its sovereignty over these lands, and an acquiescence by plaintiff's predecessor in title in such assertion. In the state's conveyance, Exhibit 1, it is described as:

"All that tract of land under the waters of the Bay of New York in the city of Jersey City in the county of Hudson and state of New Jersey described as follows."

Moreover, Exhibit No. 2 of plaintiff's bill shows that he accepted an assignment of the Morris & Cumings Dredging Company wherein the land was again described as "that tract of land under the waters of the bay of New York in the city of Jersey City in the county of Hudson and the state of New Jersey," and wherein it is recited that a mortgage of $100,000 on said property was recorded in Hudson coun-

ty. These facts, together with the assessment of taxes thereon by the authorities of Jersey City, disclose such an assertion, practice, and acquiescence on the part of state, municipality, and owner, covering a period of approximately 30 years, in the assumption that the land in question was included in Jersey City as call for that salutary principle of interpretation which makes fixed practice its own interpreter. Stuart v. Laird, 1 Cranch, 308, 2 L. Ed. 115; United States v. Commonwealth, 186 Fed. 288, 108 C. C. A. 331.

[4] But, passing by these inferential considerations, we turn to the positive evidence of boundary disclosed in the record. As we have seen, by the Compact of 1833 and its construction by the courts (70 N. J. Law, 81, 56 Atl. 239; 72 N. J. Law, 311, 61 Atl. 1118; and 209 U. S. 476, 28 Sup. Ct. 592, 52 L. Ed. 896) this submerged land lies within the boundary of New Jersey. The boundary at this point is the middle of the bay of New York. Such being the case, the act of New Jersey of February 22, 1840 (Rev. of N. J. 1877, p. 205, § 42), creating the county of Hudson, included these lands in that county by language which made the boundary line in New York Bay between New York and New Jersey also the boundary of Hudson county, viz.:

"Thence down the said Passaic river and Newark Bay, in the several courses thereof, on the boundary lines between the county of Bergen, as the same stood before the passing of this act, and the counties of Passaic and Essex, to Kill-Van-Kull; thence, eastwardly, *on the boundary line between this state and the state of New York*, to the Hudson river, thence, northwardly, continuing on the said boundary line between this state and the state of New York, up the said Hudson river to the place of beginning, * * * and said lines shall hereafter be the division lines between the counties of Essex, Passaic, and Bergen, and the state of New York, and the said county of Hudson, respectively."

[5] It will thus be seen that the locus in quo is in Hudson county. Is it also included in Jersey City? It will be noted that no contention is made that, if not in Jersey City, it falls within any other New Jersey municipality. Without detailing the various acts and findings of commissioners relating thereto, it suffices to say that the upland which this submerged locus in quo fronts was included in the township of Bergen, a subdivision of Hudson county. By the act of March 11, 1862 (Laws of New Jersey, p. 162) "all that part of the county of Hudson which now constitutes the township of Bergen" was incorporated as the town of Bergen. By the act of March 18, 1863 (Laws of New Jersey, p. 306) the "southwestern part or portion of the township of Bergen, as it existed immediately previous to the passage of said act, and comprised, or nearly so, within the limits of what is known as Washington School District, Number three, bounded on the southeast by New York Harbor," etc., was detached from the town of Bergen and incorporated as the township of Greenville.

Upon the alleged restriction of the township of Greenville to the shore line of the waters of New York Bay by the words "bounded on the southeast by New York Harbor" is based the whole contention of the plaintiff on this territorial question. Addressing ourselves to that question, it should be noted that the subsequent legislation assumes

as a fact that the water line boundary of the township of Greenville is the mid-harbor, interstate line. For example, in the act of March 11, 1868 (Laws of New Jersey, p. 314) by which the "same territory heretofore known and incorporated as 'The Town of Bergen,' * * * is hereby formed into a city corporate, to be designated and known in law as 'the city of Bergen,'" it will be noted that not only is the Bergen shore boundary carried to the interstate boundary line, but it is stated that the Greenville township line also extends to the New York line. The act incorporating the city of Bergen thus describes its pertinent boundaries:

"Thence southerly along the center of Mill creek its several courses into *New York Bay, until it intersects the boundary line of the state of New York;* thence southerly along said boundary line of the state of New York until it intersects *the dividing line between the township of Greenville* and the city of Bergen," etc.

But apart from the statutory construction thus placed by the state of New Jersey on its own territorial legislation, we think the words in the township of Greenville act, viz., "bounded on the southeast by New York Harbor," should not receive the narow construction contended for the plaintiff. To do so is to lose sight of the principle that boundaries by such terms as "sea," "bay," "harbor," "creek" or "river," includes land below high-water mark as far as the grantor owns. Atty. Gen. v. Delaware R. R., 27 N. J. Eq. 631; Boston v. Richardson, 95 Mass. (13 Allen) 146; Atlantic Dock Co. v. Brooklyn, 1 Abb. Dec. (N. Y.) 24; Rex v. Landulph, 1 Moody & R. N. P. Rep. 393; McCannon v. Sinclair, 2 El. & El. (Q. B.) 53. Moreover, it must not be overlooked that, in the context in which the words "bounded on the southeast by New York Harbor" are used, we have not before us the precise accuracy involved in a grant by an individual in conveying a specific part of a larger tract of land, but the general wording of a statute passed with a view to include within some municipal subdivision every part of the state's sovereignty, a purpose necessitated in order to extend the benefits of government to all its territory. In that regard the court below well said:

"The terms used by a sovereign in such grants are not to be subjected to the strict rule of construction as when it grants title to some of its territory to a private grantee. The legislative purpose sought by such territorial subdivision is to be kept in mind. * * * To admit the contention of complainant under this head, a class of property than which none is more valuable, would escape taxation, not by express legislative exemption—the only way indicated in the city enactments—but by a narrow construction of the word 'on' in running the harbor boundary. Such a rule of construction is not permissible in view of the state's policy, clearly indicated by legislation granting title to lands under tide water, requiring the taxation of all property within the state, and subdividing the entire territory of the state into taxing districts, to impose and collect such taxes."

To this it may be added that the deed under which the plaintiff claims, and which is exhibited as part of the bill, and is the foundation of his property right to invoke jurisdiction in this case, itself shows the assertion and act of the state locates this land in Jersey City, viz.:

"All that tract of land under the waters of the bay of New York in the city of Jersey City in the county of Hudson and state of New Jersey."

For the plaintiff to aver that such is not the fact, that the said lands are neither in the state, county, nor municipality, and to say that the deed conveyed no such land, is virtually to undermine the support on which his right to relief is based.

Having thus found that the locus in quo is in Jersey City, we turn to the next question, viz., Are the lands in question liable for the taxes claimed? As to the actual assessment of the taxes the stipulation concedes—

"that the taxes in question mentioned in the foregoing bill were originally levied for city, county, state and school purposes in the same manner as such taxes were levied upon other property in Jersey City."

But it is contended that the conveyance from the state of New Jersey to the Morris & Cumings Dredging Company, being Exhibit 1, was only a lease of the property; that the state is still the real owner, and that no taxes can be legally assessed against lands owned by the state, or against the mere leasehold interest of any one holding under such a conveyance as Exhibit 1. The various statutes of New Jersey and the conveyance are fully set forth in the opinion of the court below, and by reference thereto we avoid a repetition that would needlessly lengthen the present discussion. After a thorough examination that court held—

"that the estate conveyed is an estate in fee simple, with a condition subsequent, the condition being that, if the annual payments are not made when due, the estate may be defeated, and that the land described in the instrument made by the state of New Jersey to the plaintiff's grantor is taxable in his hands."

In such conclusion we concur. Without discussing other New Jersey cases, none of which in our judgment rule the present question, it suffices to say that we find support for the foregoing conclusion in Hudson Tunnel Co. v. Board of Riparian Com'rs, 27 N. J. Eq. 573; Cook v. Bayonne, 80 N. J. Law, 598, 77 Atl. 1048, and Cook v. The Mayor, 80 N. J. Law, 596, 77 Atl. 1048, decided during the pendency of the present case, wherein the Supreme Court of the state held:

"An instrument calling itself a 'lease,' made by the Riparian Commission of this state for lands under water, pursuant to the statutes of 1869 and 1871 (3 Gen. St. 1895, pp. 2788, 2790), which 'bargains, sells, leases and conveys' to the grantee, 'her heirs and assigns forever,' with habendum in fee and reservation of annual rental, with right of re-entry and of distress in case of nonpayment expressly reserved, and covenanting for a further conveyance free and discharged of the rent on payment of a stipulated gross sum, is a grant in fee, subject to a rent charge, and the land therein described is taxable in the hands of the grantee."

[6, 7] Subsequent to the filing of this bill certain proceedings were taken by Jersey City under the New Jersey statute of March 30, 1886 (Laws of New Jersey, p. 149), commonly known as the "Martin Act." Such proceeding is reported in Jersey City v. Speer, 78 N. J. Law, 34, 27 Atl. 448; affirmed 79 N. J. Law, 598, 76 Atl. 1037. Thereupon a supplemental bill was filed in this case, in which it was averred that said proceeding had been instituted; that thereunder the commissioner "proceeded to consider the taxes claimed to have been assessed, levied, and apportioned against the lands and premises mentioned and

set forth in your orator's bill,   *   *   *   and did report that they had adjusted the alleged taxes against the lands and premises mentioned in your orator's bill of complaint," etc., and that said report was duly confirmed by the circuit court of Hudson county. The supplemental bill, by reference to the original bill, then alleged, inter alia, that by reason of the ownership of the fee by the state of New Jersey and of the lands not being within either the territorial jurisdiction of New Jersey or the corporate limits of Jersey City, they were not taxable, and the proceedings of the commissioners was illegal and in violation of the plaintiff's constitutional rights. It is, of course, clear that if the fee of the lands in question was in the state, or if the lands themselves were not in Jersey City, no valid basis existed on which any adjustment could be based, but it is equally clear that if these lands are in Jersey City and the plaintiff and not the state is the owner of them, they are taxable by the authorities of Jersey City, and the adjustment of taxes thus imposed can be and was lawfully confided to such a tribunal. If so, the taxpayer is not denied due process of law, and the action of such tribunal cannot be attacked collaterally. That the lands in question are in Jersey City, and that the plaintiff, not the state, is the owner thereof, we have already found, so that the objections which the plaintiff made to the jurisdictional power of the commission was without foundation. That he did not avail himself of his further right to raise the other questions he now seeks to raise as to lien, limitation, the fact that some of the taxes were assessed prior to the conveyance, and other kindred matters, does not change the situation, for the law gave him that right before the commission. He not only appeared before it, but was represented by counsel when the report came up for confirmation in the circuit court of Hudson county. That proceeding—see Jersey City v. Speer, supra—was before a board of the general nature referred to in Stanley v. Supervisors, 121 U. S. 550, 7 Sup. Ct. 1239, 30 L. Ed. 1000, where the Supreme Court said:

"In nearly all the states, probably in all of them, provision is made by law for the correction of errors and irregularities of assessors in the assessment of property for the purposes of taxation. This is generally through boards of revision or equalization, as they are often termed, with sometimes a right of appeal from their decision to the courts of law.   *   *   *   To these boards of revision, by whatever name they may be called, the citizen must apply for relief against excessive and irregular taxation, where the assessing officers had jurisdiction to assess the property. Their action is judicial in its character. They pass judgment on the value of the property upon personal examination and evidence respecting it. Their action being judicial, their judgments in cases within their jurisdiction are not open to collateral attack. If not corrected by some of the modes pointed out by statute, they are conclusive, whatever errors may have been committed in the assessment."

No allegation is here made that the Commission did not act in accordance with the formal statutory requirements as to notice and procedure. The plaintiff, as we have seen, was represented by counsel at the meetings, and also in court when the report came up for confirmation. The powers committed to the Commission by the act were comprehensive, and authorized them, inter alia—

"to examine into and fix, adjust and determine, as to each parcel of land, how much of such arrearages and subsequent taxes, assessments or water rates, if any, ought, in the way of tax, assessment or water rate, in fairness, equity and justice, to be laid, assessed and charged against and actually collected from said land," etc.

The act also provided:

"That no writ of certiorari shall be allowed to contest or set aside any tax, assessment and lien fixed or determined by the said Commissioners, or to set aside any proceedings under this act to collect the same, unless the party applying for such writ shall give a bond, with approved security, conditioned for the payment of so much of said tax, assessment and lien as shall be ascertained to be justly payable, with interest and costs, nor unless application therefor be made within six months from the confirmation of the said report."

It would therefore appear that other than the territorial questions which we have here decided, all other questions the plaintiff here seeks to raise either were such as he could have raised before the commissioners, or in the courts empowered to confirm and review their action. Of neither of these rights under the law has he availed himself, and with full opportunity to him to produce testimony and to review any adverse finding, we are of the opinion that his rights were not determined without due process of law. He had notice of the proceeding, and indeed appeared before it to contest its jurisdiction. Having thus had an opportunity to raise before a competent tribunal the administrative questions he now seeks to raise in this court, he cannot justly complain, when this court holds all such administrative questions as to the amount, scope, and lien of the taxes, questions which he could have raised before such tribunal, are settled by its decree, and cannot be attacked collaterally.

After a full consideration of the many phases of the case, we have reached the conclusion that the court below made no error in dismissing the bill. Its decree is therefore affirmed.